IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MANOR CARE OF AMERICA, INC. ) | |
| ) | |
|     Plaintiff ) | |
| ) | |
| v. ) | Civil Court Action No: L02CV4206 |
| ) | |
| PROPERTY & CASUALTY INSURANCE ) | |
| GUARANTY CORPORATION ) | |
| ) | |
|     Defendant ) | |
| ) | |

### DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

Defendant, Property & Casualty Insurance Guaranty Corporation, by its undersigned counsel, hereby renews its Motion Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and as grounds therefore, states as follows:

1. There are no genuine factual disputes with respect to Plaintiff's non-residency status, thereby entitling the Defendants to judgment as a matter of law.

2. In further support of this Motion, the Defendant incorporates by reference herein the attached Memorandum of Law.

                                                                                     Respectfully submitted,

                                                                                     /s/
                                              Albert J. Mezzanotte, Jr., Bar No. 00197
                                              Edward M. Buxbaum, Bar No. 05015
                                              Whiteford, Taylor & Preston L.L.P.
                                              Seven Saint Paul Street
                                              Baltimore, Maryland 21202-1626
                                              (410) 347-8700

                                              Attorneys for Defendant,
                                              *Property & Casualty Insurance Guaranty Corporation*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MANOR CARE OF AMERICA, INC. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Court Action No: L02CV4206 |
| | ) | |
| PROPERTY & CASUALTY INSURANCE | ) | |
| GUARANTY CORPORATION | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS RENEWED
MOTION FOR SUMMARY JUDGMENT**

Defendant, Property & Casualty Insurance Guaranty Corporation ("PCIGC"), submits this Memorandum in support of its Renewed Motion for Summary Judgment. In light of the undisputed material facts, the Defendant is not obligated to defend or indemnify Plaintiff, Manor Care of America, Inc. ("Manor Care") as a matter of law and is thus entitled to summary judgment.

**I.   INTRODUCTION AND STATEMENT OF UNDISPUTED MATERIAL FACTS**

This case arises out of the insolvency of PHICO, a liability insurer that provided professional liability coverage to the Plaintiff for the period June 1, 1993 through June 1, 1997. (Compl. ¶ 7.) PHICO was determined to be insolvent and ordered into liquidation by the Commonwealth Court of Pennsylvania on February 1, 2002. (Compl ¶ 16.) Thereafter, various professional liability claims

that had been pending against the Plaintiff [1] were presented to the Defendant for coverage. (Compl. ¶ 12.) Upon the Defendant's declination of coverage, the Plaintiff filed this declaratory judgment action in an attempt to force PCIGC to provide a defense and indemnification for those professional liability claims.

With its answer to the Complaint, the Defendant filed a Motion for Summary Judgment, which this Court denied without prejudice so as to allow for limited "targeted" discovery focused on whether the Plaintiff meets the prerequisites for coverage as set forth in § 9-301 and 9-302 of the Maryland Insurance Code. See, Joint Discovery Plan. The discovery period having now lapsed, and it being clear that there remain no genuine, material facts in dispute, the Defendant is entitled to judgment as a matter of law.

The undisputed facts make clear that when the Plaintiff presented these professional liability claims to PCIGC for coverage, Manor Care was not a resident of the State of Maryland and had not been a Maryland resident since it moved its principal place of business to Ohio in September of 1998. (Compl. ¶ 2.) Thus, having abandoned Maryland as its principal place of business nearly five years ago, the Plaintiff now returns to the State seeking insurance coverage from the Defendant with regard to various litigation matters venued outside of Maryland.

---

[1] The Complaint also references certain unnamed "affiliates and subsidiaries" of Plaintiff that are apparently also involved in the underlying negligence claims. The unnamed affiliates and subsidiaries are not parties to the Plaintiff's Declaratory Judgment action and accordingly, their status is not material to the Court's consideration of this motion.

The Plaintiff readily concedes, however, that PCIGC was created to provide a limited coverage fund only "to residents of the State of Maryland who are claimants or policyholders of an insolvent insurer." Compl. ¶ 4; Md. Code Ann. Ins. § 9-302(1) (1997). As the Plaintiff has stipulated that none of the Claimants/Plaintiffs pursuing professional negligence claims against Manor Care are Maryland residents, (Exhibit A), the sole issue for the Court to consider is whether Manor Care, having last maintained residency in Maryland in 1998, is somehow entitled to coverage from the Defendant. The unequivocal answer to that question is that Plaintiff is not so entitled. The applicable Maryland statute unambiguously provides that PCIGC owes coverage only to those insureds of insolvent carriers that are Maryland residents at the time the claim is presented to the Defendant. As there is no dispute that Manor Care is not a current Maryland resident, has not been a Maryland resident since 1998, and was not a Maryland resident when it presented the negligence claims to the Defendant for coverage, PCIGC is entitled to judgment as a matter of law and respectfully requests that this Court grant Summary Judgment in its favor.

II. **ARGUMENT**

    **A. Standard Of Review**

Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure serves the important purpose of "conserv[ing] judicial time and energy by avoiding an unnecessary trial and by providing a speedy and efficient summary disposition" of litigation in which the Plaintiff fails to make some minimal showing that the Defendant

may be liable on the claims alleged.  Bland v. Norfolk & Southern R.R. Co., 406 F.2d 863, 866 (4th Cir. 1969).  The applicable standards for analyzing a Motion for Summary Judgment under Rule 56 are well established.  The party seeking summary judgment bears the burden of showing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In determining whether the moving party has sustained its burden, the court must consider whether, when assessing the evidence in the light most favorable to the non-moving party, a fact-finder could return a verdict in favor of the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Where, as here, the Complaint and Stipulation make clear that there is no dispute as to the non-Maryland residency of the Claimants in the underlying professional liability matter and Manor Care itself, the Defendant is entitled to judgment as a matter of law.

> **B. Manor Care Is Not A Resident Of Maryland And Thus Falls Outside The Ambit Of Coverage Provided By The Controlling Maryland Statute.**

The Maryland Legislature established PCIGC in 1971 (formerly known as the Maryland Insurance Guaranty Association) to fulfill the obligations of insolvent insurers insofar as payment to Maryland residents is concerned.  Joe Shifflett, Inc. v. Property & Cas. Ins. Guaranty Corp., 77 Md. App. 706, 709-10, 551 A.2d 913, 915 (1989); see also Md. Code Ann., Ins. § 9-301 et seq. (1997 Repl. Vol.).  Indeed, the Maryland Insurance Code expressly provides that the purposes of the Corporation are:

> (1) To provide a mechanism for the prompt payment of covered claims under certain policies and to avoid financial loss <u>to residents</u> of the State who are claimants or policyholders of an insolvent insurer; and

      (2)      To provide for the assessment of the cost of payments of covered claims and protection among insurers.

Md. Code Ann., Ins. § 9-302 (1997 Repl. Vol.) (emphasis added).

Thus, in order to constitute a "covered claim" thereby triggering a coverage obligation on the part of PCIGC, Maryland law requires, *inter alia*, that either the Claimants or the Defendants be a Maryland "resident." The guarantee fund statute goes on to define the term "resident" to mean:

(1) An individual domiciled in the State; or

(2) A corporation or entity whose principal place of business <u>is in the State</u>.

Md. Code Ann., Ins. § 9-301(h) (emphasis added). Accordingly, the plain language of the statute makes clear that in order to trigger coverage from PCIGC, the Corporate Plaintiff must presently have its principal place of business in Maryland.

In interpreting a statute under Maryland law, the primary goal is to ascertain and effectuate the intent of the legislature; the words of the statute itself form the basis for this analysis. <u>Oaks v. Connors</u>, 339 Md. 24, 35, 660 A.2d 423, 429 (1995); <u>see also</u> <u>Dyer v. Otis Warren Real Estate Co.</u>, 810 A.2d 938, 941-42 (Md. 2002) (setting forth the rules of statutory construction). Where, as here, the language of the statute is plain and unambiguous, and expresses a "definite and simple meaning", the court need not look further to discern legislative intent. <u>State v. Bell</u>, 351 Md. 709, 717-18, 720 A.2d 311, 315 (1998).

The statute at issue plainly and unambiguously defines the residency of a corporation in the present tense. The Court of Special Appeals of Maryland has previously interpreted statutory language phrased in the present tense and has held

that the legislature's use of the present tense should be construed to indicate only present tense.  See In re Charles K, 135 Md. App. 84, 761 A.2d 978 (2000); Allen v. State, 18 Md. App. 459, 307 A.2d 493 (1973).

In In re Charles K, the legislation in question concerned the definition of a "delinquent child."  The relevant statute defined a "delinquent child" as "a child who has committed a delinquent act and requires guidance, treatment or rehabilitation."  In re Charles K, 135 Md. App. at 91, 761 A.2d at 981 (emphasis added).  The lower court determined that the child in question was a delinquent child, even though the child was not currently in need of treatment services on the date of disposition.  Id.  On appeal, the court held that the statutory language was clear and unambiguous in its definition of a "delinquent child" as a child presently requiring guidance, treatment or rehabilitation.  Id. at 98, 761 A.2d at 985.  The court noted that while the first prong of the definition of a "delinquent child" spoke to past events, the second prong of that definition ("requires") spoke to a current need.  Id.  The Appellate Court properly gave significance to the fact that there was a change in tenses within the statute and stated:

> [T]he requirement for guidance, treatment, or rehabilitation is clearly expressed in the present tense.  Therefore, to satisfy the statutory definition of a delinquent child, the court had to find that Charles had committed a delinquent act and that he currently is in need of guidance, treatment, or rehabilitation.

Id. (emphasis added).

Similarly, in Allen v. State, the court based its interpretation of the relevant statute on the legislature's use of the present tense.  In Allen, the appellant had been convicted of illegally possessing slot machines.  The relevant statute defined a "slot

machine" as a device, "that is adapted for use" as a game of chance. Allen, 18 Md. App. at 461, 307 A.2d at 494-95 (emphasis added).  The machines that the appellant possessed were adaptable for use as "slot machines" but, at the time they were found in the appellant's possession, had not yet been adapted for such use.  Id. at 463-64; 307 A.2d at 496.  The court noted that the legislature chose to use the verb "adapt" in its present tense and passive voice.  Id. at 465, 307 A.2d at 497.  The court adhered to the principle that its function was to "ascertain the meaning of the words which the Legislature used, not what it might have said."  Id.  As such, the appellate court, in reversing the trial court, concluded that the legislature could have chosen words that would have achieved a broader reach, but had not done so.  Id.

In the case at bar, the applicable language of the statute specifies that, in order to receive the benefits of Maryland's insurance guaranty fund, the Plaintiff must have an existing, current principal place of business in this State.  Consistent with Allen and In re Charles K, the legislature's express definition of the term "resident" as "[a] corporation or entity whose principal place of business is in the State," Md. Code Ann., Ins. § 9-301(h) (emphasis added), must be given its plain, present tense, meaning.

Moreover, this reading of the statute is wholly consistent with the legislative purpose of the Guaranty Fund Statute.  Specifically, the statute was enacted "to avoid financial loss to residents of the State who are claimants or policyholders of an insolvent insurer[.]"  Md. Code Ann., Ins. § 9-302(1) (2001); see also Joe Shifflett, Inc., 77 Md. App. at 709-10, 551 A.2d at 915.  "The statute makes transpicuous that its goal is to benefit claimants who are Maryland residents *or* policyholders who are Maryland residents.

- 7 -

The statute contemplates PCIGC's fulfilling the obligations that the insolvent insurer should have fulfilled insofar as payment to Maryland residents is concerned." <u>Joe Shifflett, Inc.</u>, 77 Md. App. at 710, 551 A.2d at 915 (emphasis added). As an Ohio resident, the Plaintiff is clearly not entitled to obtain coverage from the Defendant.

That the Maryland statute was enacted to provide benefits only to current Maryland residents is further supported by comparing the Maryland statutory definitions of a "covered claim" and "resident" to the definitions provided in the National Association of Insurance Commissioners Model Laws (hereinafter the "Model Act"), attached hereto as **Exhibit B**. In the definitions section of the Model Act at §5.F(1) a "covered claim" is defined to mean a claim for coverage as a result of an insurer's insolvency by an insured that "is a resident of this State at the time of the insured event . . . ." Further, the Model Act provides a broad definition of residency for a Corporation by extending coverage to a corporate entity whose principal place of business was in State "at the time of the insured event." <u>Id.</u> As such, the Model Act clearly provides a far broader reach for coverage than the Maryland statute by including language (not found in the Maryland statute) that would permit a non-resident corporation to trigger coverage if it had been a resident of the State at the time of the "insured event." The Maryland legislature certainly could have adopted the language of the Model Act if it desired to provide an equally broad reach. Rather, our legislature opted for a far more narrow definition of "covered claim" and "resident", requiring that corporations seeking coverage be currently domiciled in Maryland in order to trigger coverage from PCIGC, making it clear that the legislative intent was to

limit, not expand, the scope of the Defendant's obligations. Where, as here, it is undisputed based upon Plaintiff's own Complaint that Manor Care is not a current Maryland resident and was not a Maryland resident at the time it submitted these claims to the Defendant for coverage, the controlling and unambiguous Maryland statute compels the conclusion that PCIGC owes no obligations and has no liability to the Plaintiff as a matter of law.

### III. CONCLUSION

Based upon the undisputed material facts and as a matter of Maryland law, Manor Care does not meet the statutory requirements to trigger coverage by PCIGC. Wherefore, PCIGC respectfully submits that it is entitled to judgment as a matter of law on all counts of the Complaint.

/s/
Albert J. Mezzanotte, Jr., Bar No. 00197
Edward M. Buxbaum, Bar No. 05015
Whiteford, Taylor & Preston L.L.P.
Seven Saint Paul Street
Baltimore, Maryland 21202-1626
(410) 347-8700

Attorneys for Defendant,
*Property & Casualty Insurance Guaranty Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of August, 2003, a copy of the Defendant's Motion for Summary Judgment and Memorandum of Law in Support thereof was mailed, first class, postage prepaid, to:

> James H. Hulme, Esquire
> Deanne M. Ottaviano, Esquire
> Arent Fox Kintner Plotkin & Kahn, PLLC
> 1050 Connecticut Ave., NW
> Washington, D.C. 20036-5339

and

> Gerald R. Kowalski, Esquire
> Jodi D. Spencer, Esquire
> Cooper & Walinski
> 900 Adams Street
> Toledo, Ohio  43624
> *Attorneys for Plaintiff*

_____/s/_____
Edward M. Buxbaum

*1468136v2*