IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| MANOR CARE OF AMERICA, INC. | * | |
| Plaintiff | * | |
| v. | * | Civil Action No.: L02CV4206 |
| PROPERTY & CASUALTY INSURANCE GUARANTY CORPORATION | * | |
| | * | |
| Defendant | * | |

* * * * * * * * * * *

## STIPULATION

Now come the parties, by their undersigned counsel, and hereby stipulate as follows:

As to all claims and lawsuits asserted against Manor Care of America, Inc. for which Manor Care of America, Inc. claims that Property & Casualty Insurance Guaranty Corporation owes it a defense and/or indemnity (as more fully alleged in Paragraph 12 of the Complaint), none of the Plaintiffs or Claimants in such matters are residents of the State of Maryland as defined in § 9-301(h) of the Maryland Insurance Code.

_____
Gerald R. Kowalski
Cooper & Walinski
900 Adams Street
Toldeo, Ohio  43624
419-241-1200
   Attorneys for Plaintiff

_____
Albert J. Mezzanotte, Jr.
Edward M. Buxbaum
Whiteford, Taylor & Preston, LLP
First Union Tower – Suite 1200
Seven Saint Paul Street
Baltimore, Maryland  21202-1626
410-347-8700
   Attorneys for Defendant

1506467


EXHIBIT A

NAIC 540-1                                                                                                        Page 1

NATIONAL ASSOCIATION OF INSURANCE COMMISSIONERS (N.A.I.C.)
MODEL LAWS, REGULATIONS AND GUIDELINES
INSOLVENCY
POST-ASSESSMENT PROPERTY AND LIABILITY INSURANCE GUARANTY ASSOCIATION MODEL ACT

Current through November 2002

Table of Contents

1. Title

2. Purpose

3. Scope

4. Construction

5. Definitions

6. Creation of the Association

7. Board of Directors

8. Powers and Duties of the Association

9. Plan of Operation

10. Duties and Powers of the Commissioner

11. Effect of Paid Claims

12. Exhaustion of Other Coverage

13. Prevention of Insolvencies

14. Examination of the Association

15. Tax Exemption

16. Recognition of Assessments in Rates

17. Immunity

18. Stay of Proceedings

1. Title

   This Act shall be known as the [state] Insurance Guaranty Association Act.

2. Purpose

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works


EXHIBIT B

NAIC 540-1                                                                                          Page 2

The purpose of this Act is to provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payment and to the extent provided in this Act minimize financial loss to claimants or policyholders because of the insolvency of an insurer, and to provide an association to assess the cost of such protection among insurers.

3. Scope

This Act shall apply to all kinds of direct insurance, but shall not be applicable to the following:
A. Life, annuity, health or disability insurance;
B. Mortgage guaranty, financial guaranty or other forms of insurance offering protection against investment risks;
C. Fidelity or surety bonds, or any other bonding obligations;
D. Credit insurance, vendors' single interest insurance, or collateral protection insurance or any similar insurance protecting the interests of a creditor arising out of a creditor-debtor transaction.
E. Insurance of warranties or service contracts including insurance that provides for the repair, replacement or service of goods or property, indemnification for repair, replacement or service for the operational or structural failure of the goods or property due to a defect in materials, workmanship or normal wear and tear, or provides reimbursement for the liability incurred by the issuer of agreements or service contracts that provide such benefits;
F. Title insurance;
G. Ocean marine insurance;
H. Any transaction or combination of transactions between a person (including affiliates of such person) and an insurer (including affiliates of such insurer) which involves the transfer of investment or credit risk unaccompanied by transfer of insurance risk; or
I. Any insurance provided by or guaranteed by government.

Comment: This bill focuses on property and liability kinds of insurance and therefore exempts those kinds of insurance deemed to present problems quite distinct from those of property and liability insurance. The bill further precludes from its scope certain types of insurance that provide protection for investment and financial risks. Financial guaranty is one of these. The NAIC Life and Health Insurance Guaranty Association Model Act provides for coverage of some, of the lines excluded by this provision.

For purposes of this section, "Financial guaranty insurance" includes any insurance under which loss is payable upon proof of occurrence of any of the following events to the damage of an insured claimant or obligee:
   1. Failure of any obligor or obligors on any debt instrument or other monetary obligation, including common or preferred stock, to pay when due the principal, interest, dividend or purchase price of such instrument or obligation, whether failure is the result of a financial default or insolvency and whether or not the obligation is incurred directly or as guarantor by, or on behalf of, another obligor which has also defaulted;
   2. Changes in the level of interest rates whether short term or long term, or in the difference between interest rates existing in various markets;
   3. Changes in the rate of exchange of currency, or from the inconvertibility of one currency into another for any reason;

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

NAIC 540-1                                                                                                          Page 3

    4. Changes in the value of specific assets or commodities, or price levels in general.

   For purposes of this section, "credit insurance" means insurance on accounts receivable.

   The terms "disability insurance" and "accident and health insurance," and "health insurance" are intended to be synonymous. Each state will wish to examine its own statutes to determine which is the appropriate phrase.

   A state where the insurance code does not adequately define ocean marine insurance may wish to add the following to Section 5, Definitions: "Ocean marine insurance" means any form of insurance, regardless of the name, label or marketing designation of the insurance policy, which insures against maritime perils or risks and other related perils or risks, which are usually insured against by traditional marine insurance, such as hull and machinery, marine builders risk, and marine protection and indemnity. Perils and risk insured against include without limitation loss, damage, expense or legal liability of the insured for loss, damage or expense arising out of or incident to ownership, operation, chartering, maintenance, use, repair or construction of any vessel, craft or instrumentality in use in ocean or inland waterways for commercial purposes, including liability of the insured for personal injury, illness or death or for loss or damage to the property of the insured or another person.

   4. Construction


   This Act shall be construed to effect the purpose under Section 2 which will constitute an aid and guide to interpretation.


   5. Definitions


   As used in this Act:

 [Optional:
   A. "Account" means any one of the three accounts created by Section 6.]
   Comment: This definition should be used by those states wishing to create separate accounts for assessment purposes. For a note on the use of separate accounts for assessments see the comment after Section 6. If this definition is used, all subsequent subsections should be renumbered.
   A. "Affiliate" means a person who directly, or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with an insolvent insurer on December 31 of the year immediately preceding the date the insurer becomes an insolvent insurer.
   B. "Association" means the [state] Insurance Guaranty Association created under Section 6.
   C. "Claimant" means any insured making a first party claim or any person instituting a liability claim, provided that no person who is an affiliate of the insolvent insurer may be a claimant.
   D. "Commissioner" means the Commissioner of Insurance of this state.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

NAIC 540-1                                                                 Page 4

  Drafting Note: Use the appropriate title for the chief insurance regulatory official wherever the term "commissioner" appears.
  E. "Control" means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract other than a commercial contract for goods or nonmanagement services, or otherwise, unless the power is the result of an official position with or corporate office held by the person. Control shall be presumed to exist if a person, directly or indirectly, owns, controls, holds with the power to vote, or holds proxies representing, ten percent (10%) or more of the voting securities of any other person. This presumption may be rebutted by a showing that control does not exist in fact.
  F. "Covered claim" means an unpaid claim, including one for unearned premiums, submitted by a claimant, which arises out of and is within the coverage and is subject to the applicable limits of an insurance policy to which this Act applies issued by an insurer, if the insurer becomes an insolvent insurer after the effective date of this Act and:
(1) The claimant or insured is a resident of this state at the time of the insured event, provided that for entities other than an individual, the residence of a claimant, insured or policyholder is the state in which its principal place of business is located at the time of the insured event; or
(2) The claim is a first party claim for damage to property with a permanent location in this state.
(3) "Covered claim" shall not include;
(a) Any amount awarded as punitive or exemplary damages;
(b) Any amount sought as a return of premium under any retrospective rating plan;
(c) Any amount due any reinsurer, insurer, insurance pool or underwriting association as subrogation recoveries, reinsurance recoveries, contribution, indemnification or otherwise. No claim for any amount due any reinsurer, insurer, insurance pool or underwriting association may be asserted against a person insured under a policy issued by an insolvent insurer other than to the extent the claim exceeds the association obligation limitations set forth in Section [insert section number] of this Act;
(d) Any first party claims by an insured whose net worth exceeds $25 million on December 31 of the year prior to the year in which the insurer becomes an insolvent insurer; provided that an insured's net worth on that date shall be deemed to include the aggregate net worth of the insured and all of its subsidiaries as calculated on a consolidated basis; or
(e) Any first party claims by an insured which is an affiliate of the insolvent insurer.
  G. "Insolvent insurer" means an insurer licensed to transact insurance in this state, either at the time the policy was issued or when the insured event occurred, and against whom a final order of liquidation has been entered after the effective date of this Act with a finding of insolvency by a court of competent jurisdiction in the insurer's state of domicile.

  Drafting Note: "Final order" as used in this section means an order which has not been stayed. States in which the "final order" language does not accurately reflect whether or not the order is subject to a stay should substitute appropriate language consistent with the statutes or rules of the state to convey the intended meaning.
  H. (1) "Member insurer" means any person who:
(a) Writes any kind of insurance to which this Act applies under Section 3, including the exchange of reciprocal or inter-insurance contracts; and
(b) Is licensed to transact insurance in this state (except at the option of the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

NAIC 540-1                                                                                          Page 5

state).
    (2) An insurer shall cease to be a member insurer effective on the day following the termination or expiration of its license to transact the kinds of insurance to which this Act applies, however, the insurer shall remain liable as a member insurer for any and all obligations, including obligations for assessments levied prior to the termination or expiration of the insurer's license and assessments levied after the termination or expiration, with respect to any insurer that became an insolvent insurer prior to the termination or expiration of the insurer's license.
    I. "Net direct written premiums" means direct gross premiums' less return premiums written in this state on insurance policies to which this Act applies, and dividends paid or credit to policyholders on that direct business. "Net direct written premiums" does not include premiums on contracts between insurers or reinsurers.
    J. "Person" means any individual, corporation, partnership, association or voluntary organization.

6. Creation of the Association

   There is created a nonprofit unincorporated legal entity to be known as the [state] Insurance Guaranty Association. All insurers defined as member insurers in Section 5H shall be and remain members of the association as a condition of their authority to transact insurance in this state. The association shall perform its functions under a plan of operation established and approved under Section 9 and shall exercise its powers through a board of directors established under Section 7.

   [Alternate Section 6. Creation of the Association

   There is created a nonprofit unincorporated legal entity to be known as the [state] Insurance Guaranty Association. All insurers defined as member insurers in Section 5H shall be and remain members of the association as a condition of their authority to transact insurance in this state. The association shall perform its functions under a plan of operation established and approved under Section 9 and shall exercise its powers through a board of directors established under Section 7. For purposes of administration and assessment, the association shall be divided into three separate accounts:
    A. The workers' compensation insurance account;
    B. The automobile insurance account; and
    C. The account for all other insurance to which this Act applies.]

   Comment: The alternate Section 6 should be used if a state, after examining its insurance market, determines that separate accounts for various kinds of insurance are necessary and feasible. The major consideration is whether each account will have a base sufficiently large to cover possible insolvencies. Separate accounts will permit assessments to be generally limited to insurers writing the same kind of insurance as the insolvent company. If this approach is adopted the provision of alternate Sections 8A(3) and 8B(6) and optional Section 5A should also be used.


7. Board of Directors

    A. The board of directors of the association shall consist of not less than

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

five (5) nor more than nine (9) persons serving terms as established in the plan of operation. The insurer members of the board shall be selected by member insurers subject to the approval of the commissioner. If no members are selected within sixty (60) days after the effective date of this Act, the commissioner may appoint the initial members of the board of directors. Vacancies on the board shall be filled for the remainder of the term by a majority vote of the remaining insurer members subject to the approval of the commissioner. Two (2) persons, who must be public representatives, shall be appointed by the commissioner to the board of directors. Vacancies of positions held by public representatives shall be filled by the commissioner. A public representative may not be an officer, director or employee of an insurance company or any person engaged in the business of insurance.

   Drafting Note: A state adopting this language should make certain that its insurance code includes a definition of "the business of insurance" similar to that found in the NAIC Insurers Rehabilitation and Liquidation Model Act.
      B. In approving selections to the board, the commissioner shall consider among other things whether all member insurers are fairly represented.
      C. Members of the board of directors may be reimbursed from the assets of the association for expenses incurred by them as members of the board of directors.


8. Powers and Duties of the Association

      A. The association shall:
(1) (a) Be obligated to pay covered claims existing prior to the order of liquidation, arising within thirty (30) days after the order of liquidation, or before the policy expiration date if less than thirty (30) days after the order of liquidation, or before the insured replaces the policy or causes its cancellation, if the insured does so within thirty (30) days of the order of liquidation. The obligation shall be satisfied by paying to the claimant an amount as follows:
(i) The full amountof a covered claim for benefits under a workers' compensation insurance coverage;
(ii) An amount not exceeding $10,000 per policy for a covered claim for the return of unearned premium;
(iii) An amount not exceeding $300,000 per claimant for all other covered claims.
(b) In no event shall the association be obligated to pay a claimant an amount in excess of the obligation of the insolvent insurer under the policy or coverage from which the claim arises. Notwithstanding any other provisions of this Act, a covered claim shall not include a claim filed with the guaranty fund after the final date set by the court for the filing of claims against the liquidator or receiver of an insolvent insurer.
      Any obligation of the association to defend an insured shall cease upon the association's payment or tender of an amount equal to the lesser of the association's covered claim obligation limit or the applicable policy limit.


Comment: The obligation of the association is limited to covered claims unpaid prior to insolvency, and to claims arising within thirty days after the insolvency, or until the policy is canceled or replaced by the insured, or it expires, whichever is earlier. The basic principle is to permit policyholders to make an orderly transition to other companies. There appears to be no reason why the association should become in effect an insurer in competition with member insurers by continuing existing policies, possibly for several years. It is also

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

NAIC 540-1                                                                  Page 7

felt that the control of the policies is properly in the hands of the liquidator. Finally, one of the major objections of the public to rapid termination, loss of unearned premiums with no corresponding coverage, is ameliorated by this bill since unearned premiums are permissible claims, up to $10,000, against the association. The maximums ($10,000 for the return of unearned premium; $300,000 for all other covered claims) represent the subcommittee's concept of practical limitations, but each state will wish to evaluate these figures.

(2) Be deemed the insurer to the extent of its obligation on the covered claims and to that extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent, including but not limited to, the right to pursue and retain salvage and subrogation recoverable on covered claim obligations to the extent paid by the association.

(3) Assess insurers amounts necessary to pay the obligations of the association under Section 8A(1) subsequent to an insolvency, the expenses of handling covered claims subsequent to an insolvency, and other expenses authorized by this Act. The assessments of each member insurer shall be in the proportion that the net direct written premiums of the member insurer for the calendar year preceding the assessment bears to the net direct written premiums of all member insurers for the calendar year preceding the assessment. Each member insurer shall be notified of the assessment not later than thirty (30) days before it is due. A member insurer may not be assessed in any year an amount greater than two percent (2%) of that member insurer's net direct written premiums for the calendar year preceding the assessment. If the maximum assessment, together with the other assets of the association, does not provide in any one year an amount sufficient to make all necessary payments, the funds available shall be prorated and the unpaid portion shall be paid as soon as funds become available. The association shall pay claims in any order that it may deem reasonable, including the payment of claims as they are received from the claimants or in groups or categories of claims. The association may exempt or defer, in whole or in part, the assessment of a member insurer, if the assessment would cause the member insurer's financial statement to reflect amounts of capital or surplus less than the minimum amounts required for a certificate of authority by a jurisdiction in which the member insurer is authorized to transact insurance. However, during the period of deferment no dividends shall be paid to shareholders or policyholders. Deferred assessments shall be paid when thepayment will not reduce capital or surplus below required minimums. Payments shall be refunded to those companies receiving larger assessments by virtue of the deferment, or at the election of the company, credited against future assessments.

[Alternate Section 8A(3)
(3) Allocate claims paid and expenses incurred among the three (3) accounts separately, and assess member insurers separately for each account, amounts necessary to pay the obligations of the association under Section 8A(1) subsequent to an insolvency, the expenses of handling covered claims subsequent to an insolvency and other expenses authorized by this Act. The assessments of each member insurer shall be in the proportion that the net direct written premiums of the member insurer for the calendar year preceding the assessment on the kinds of insurance in the account bears to the net direct written premiums of all member insurers for the calendar year preceding the assessment on the kinds of insurance in the account. Each member insurer shall be notified of the assessment not later than thirty (30) days before it is due. A member insurer may not be assessed in any one year on any account an amount greater than two percent (2%) of that member insurer's net direct written premiums for the calendar year preceding the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

NAIC 540-1                                                                                                    Page 8

assessment on the kinds of insurance in the account. If the maximum assessment, together with the other assets of the association in any account, does not provide in any one year in any account an amount sufficient to make all necessary payments from that account, the funds available shall be pro-rated and the unpaid portion shall be paid as soon thereafter as funds become available. The association shall pay claims in any order which it deems reasonable, including the payment of claims as they are received from the claimants or in groups or categories of claims. The association may exempt or defer, in whole or in part, the assessment of a member insurer, if the assessment would cause the member insurer's financial statement to reflect amounts of capital or surplus less than the minimum amounts required for a certificate of authority by a jurisdiction in which the member insurer is authorized to transact insurance. However, during the period of deferment no dividends shall be paid to shareholders or policyholders. Deferred assessments shall be paid when the payment will not reduce capital or surplus below required minimums. Payments shall be refunded to those companies receiving larger assessments by virtue of such deferment, or at the election of the company, credited against future assessments. A member insurer may set off against any assessment, authorized payments made on covered claims and expenses incurred in the payment of claims by the member insurer if they are chargeable to the account for which the assessment is made.]
(4) Investigate claims brought against the association and adjust, compromise, settle and pay covered claims to the extent of the association's obligation and deny all other claims. The association may review settlements, releases and judgments to which the insolvent insurer or its insureds were parties to determine the extent to which the settlements, releases and judgments may be properly contested. The association shall have the right to appoint or substitute and to direct legal counsel retained under liability insurance policies for the defense of covered claims.
(5) Notify claimants in this state as deemed necessary by the commissioner, to the extent records are available to the association.

  Drafting Note: The intent of this paragraph is to allow, in exceptional circumstances, supplementary notice to that given by the domiciliary receiver.
(6) Handle claims through its employees or through one or more insurers or other persons designated as servicing facilities. Designation of a servicing facility is subject to the approval of the commissioner, but the designation may be declined by a member insurer.
(7) Reimburse each servicing facility for obligations of the association paid by the facility and for expenses incurred by the facility while handling claims on behalf of the association and shall pay the other expenses of the association authorized by this Act.
B. The association may:
(1) Employ or retain persons necessary to handle claims and perform other duties of the association;
(2) Borrow funds necessary to effect the purposes of this Act in accordance with the plan of operation;
(3) Sue or be sued;
(4) Negotiate and become a party to contracts necessary to carry out the purpose of this Act;
(5) Perform other acts necessary or proper to effectuate the purpose of this Act;
(6) Refund to member insurers in proportion to the contribution of each member insurer to the association that amount by which the assets of the association exceed the liabilities, if at the end of any calendar year, the board of directors finds that the assets of the association exceed the liabilities of the association

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

NAIC 540-1                                                                    Page 9

as estimated by the board of directors for the coming year.

[Alternate Section 8B(6)
(6) Refund to the member insurers in proportion to the contribution of each member insurer to that account that amount by which the assets of the account exceed the liabilities, if at the end of any calendar year, the board of directors finds that the assets of the association in any account exceed the liabilities of that account as estimated by the board of directors for the coming year.]

Comment: The subcommittee feels that the board of directors should determine the amount of the refunds to members when the assets of the association exceed its liabilities. However, since this excess may be quite small, the board is given the option of retaining all or part of it to pay expenses and possibly remove the need for a relatively small assessment at a later time.

[Optional Section 8C
C. (1) In the event a natural disaster such as an earthquake, windstorm or fire results in covered claim obligations currently payable by the association in excess of its capacity to pay from current funds and current assessments under Section 8A(3), the association, in its sole discretion, may by resolution request the [insert name of agency] Agency to issue bonds pursuant to [insert statutory authority], in such amounts as the association may determine to provide funds for the payment of covered claims and expenses related thereto. In the event bonds are issued, the association shall have the authority to annually assess member insurers for amounts necessary to pay the principal of, and interest on those bonds. Assessments collected pursuant to this authority shall be collected under the same procedures as provided in Section 8A(3) and, notwithstanding the two percent (2%) limit in Section 8A(3), shall be limited to an additional [insert percentage] percent of the annual net direct written premium in this state of each member insurer for the calendar year preceding the assessment. Assessments collected pursuant to this authority may only be used for servicing the bond obligations provided for in this section and shall be pledged for that purpose.
(2) In addition to the assessments provided for in this section, the association in its discretion, and after considering other obligations of the association, may utilize current funds of the association, assessments made under Section 8A(3) and advances or dividends received from the liquidators of insolvent insurers to pay the principal and interest on any bonds issued at the board's request.
(3) Assessments under this section shall be payable in twelve (12) monthly installments with the first installment being due and payable at the end of the month after an assessment is levied, and subsequent installments being due not later than the end of each succeeding month.

(4) In order to assure that insurers paying assessments levied under this section continue to charge rates that are neither inadequate nor excessive, within ninety (90) days after being notified of the assessments, each insurer that is to be assessed pursuant to this section shall make a rate filing for lines of business additionally assessed under this section. If the filing reflects a rate change that, as a percentage, is equal to the difference between therate of the assessment and the rate of the previous year's assessment under this section, the filing shall consist of a certification so stating and shall be deemed approved when made. Any rate change of a different percentage shall be subject to the standards and procedures of [cite appropriate statutory authority for provisions on filing and approval of rates].

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Comment: This provision should only be considered by those states that have a substantial threat of natural disasters that could result in a rash of insolvencies. An association intending to consider this provision should first consult with experienced bond counsel in its state to identify an appropriate state agency or bonding authority to act as vehicle for issuing the bonds. That agency or authority's statute will also have to be amended to specifically authorize these types of bonds and to cross-reference this provision in the guaranty association law. It is possible that in some situations a new bonding authority may have to be created for this purpose.

Regardless of the vehicle used, it is important that the decision-making authority on whether bonds are needed and in what amounts be retained by the association's board.

The extent of additional assessment authority under this section has not been specified. When considering the amount of additional authority that will be needed, a determination should be made as to the amount of funds needed to service the bonds. More specifically, consideration should be given to the amount of the bonds to be issued, interest rate and the maturity date of the bonds. The association should be able to raise sufficient funds through assessments to pay the interest and retire the bonds after some reasonable period (e.g. ten (10) years).

The intent of Subsection C(4) is to permit recoupment by member insurers of the additional cost of assessments under this section without any related regulatory approval. A state enacting this section may need to revise Subsection C(4) so that it conforms to the particular state's recoupment provisions, as well as the provisions on filing and approval of rates.]

9. Plan of Operation

A. (1) The association shall submit to the commissioner a plan of operation and any amendments to the plan of operation necessary or suitable to assure the fair, reasonable and equitable administration of the association. The plan of operation and amendments shall become effective upon approval in writing by the commissioner.
(2) If the association fails to submit a suitable plan of operation within ninety (90) days following the effective date of this Act, or if at any time thereafter the association fails to submit suitable amendments to the plan; the commissioner shall, after notice and hearing, adopt reasonable rules necessary or advisable to effectuate the provisions of this Act. The rules shall continue in force until modified by the commissioner or superseded by a plan submitted by the association and approved by the commissioner.
B. All member insurers shall comply with the plan of operation.
C. The plan of operation shall:
(1) Establish the procedures under which the powers and duties of the association under Section 8 will be performed;
(2) Establish procedures for handling assets of the association;
(3) Establish procedures for the disposition of liquidating dividends or other monies received from the estate of the insolvent insurer;
(4) Establish the amount and method of reimbursing members of the board of directors under Section 7;
(5) Establish procedures by which claims may be filed with the association and

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

establish acceptable forms of proof of covered claims. Notice of claims to the receiver or liquidator of the insolvent insurer shall be deemed notice to the association or its agent and a list of claims shall be periodically submitted to the association or similar organization in another state by the receiver or liquidator;

  Comment: On the general subject of the relationship of the association to the liquidator, the subcommittee takes the position that since this is a model state bill, it will be able to bind only two parties, the association and the in-state liquidator. Nevertheless, the provisions should be clear enough to outline the requests being made to out-of-state liquidators and the requirements placed on in-state liquidators in relation to out-of-state associations.
(6) Establish regular places and times for meetings of the board of directors;
(7) Establish procedures for records to be kept of all financial transactions of the association, its agents and the board of directors;
(8) Provide that any member insurer aggrieved by any final action or decision of the association may appeal to the commissioner within thirty (30) days after the action or decision;
(9) Establish the procedures under which selections for the board of directors will be submitted to the commissioner;
(10) Contain additional provisions necessary or proper for the execution of the powers and duties of the association.
   D. The plan of operation may provide that any or all powers and duties of the association, except those under Sections 8A(3) and 8B(2), are delegated to a corporation, association or other organization which performs or will perform functions similar to those of this association or its equivalent in two (2) or more states. The corporation, association or organization shall be reimbursed as a servicing facility would be reimbursed and shall be paid for its performance of any other functions of the association. A delegation under this subsection shall take effect only with the approval of both the board of directors and the commissioner, and may be made only to a corporation, association or organization which extends protection not substantially less favorable and effective than that provided by this Act.

  Comment: The subcommittee recognizes current discussion at both the regulatory and industry levels concerning the possible creation of a nonfederal interstate organization to perform various functions relating to the protection of policyholders and claimants from insurer insolvency. It is difficult at present to predict the type of interstate arrangement which may evolve. At the same time, the subcommittee would like to avoid the necessity of returning to each state legislature if a desirable, nonfederal interstate approach is developed. Consequently, this subsection, with appropriate standards and regulatory safeguard, provides a highly flexible transition device. The subsection operates on the theory of a revocable delegation of functions in the plan of operations if approved by the industry and the commissioner. The board of directors would continue in existence in each state which would, among other things, provide the commissioner with a contact for his regulatory control. In addition, membership would continue to be mandatory state by state as recognized under this bill and no new legislation would be necessary. This approach would permit the gradual development (e.g., a partial delegation of powers) of an interstate system as opposed to an all or nothing choice. Finally, it should be noted that the association may not delegate its powers to assess or borrow money. Assessment would continue to be made on a state by state basis in accordance with the provisions of the individual state statutes.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

NAIC 540-1                                                                  Page 12

10. Duties and Powers of the Commissioner

   A. The commissioner shall:
(1) Notify the association of the existence of an insolvent insurer not later than three (3) days after the commissioner receives notice of the determination of the insolvency. The association shall be entitled to a copy of a complaint seeking an order of liquidation with a finding of insolvency against a member company at the same time that the complaint is filed with a court of competent jurisdiction;
(2) Provide the association with a statement of the net direct written premiums of each member insurer upon request of the board of directors.
   B. The commissioner may:
(1) Suspend or revoke, after notice and hearing, the certificate of authority to transact insurance in this state of a member insurer that fails to pay an assessment when due or fails to comply with the plan of operation. As an alternative, the commissioner may levy a fine on a member insurer that fails to pay an assessment when due. The fine shall not exceed five percent (5%) of the unpaid assessment per month, except that a fine shall not be less than $100 per month;
(2) Revoke the designation of a servicing facility if the commissioner finds claims are being handled unsatisfactorily.
   C. A final action or order of the commissioner under this Act shall be subject to judicial review in a court of competent jurisdiction.


11. Effect of Paid Claims

   A. A person recovering under this Act shall be deemed to have assigned any rights under the policy to the association to the extent of his or her recovery from the association. Every insured or claimant seeking the protection of this Act shall cooperate with the association to the same extent as the person would have been required to cooperate with the insolvent insurer. The association shall have no cause of action against the insured of the insolvent insurer for sums it has paid out except causes of action the insolvent insurer would have had if the sums had been paid by the insolvent insurer and except as provided in Subsection B below. In the case of an insolvent insurer operating on a plan with assessment liability, payments of claims of the association shall not operate to reduce the liability of the insureds to the receiver, liquidator or statutory successor for unpaid assessments.
   B. The association shall have the right to recover from the following persons the amount of any covered claim paid on behalf of the person pursuant to the Act:
(1) An insured whose net worth on December 31 of the year immediately preceding the date the insurer becomes an insolvent insurer exceeds $50 million and whose liability obligations to other persons are satisfied in whole or in part by payments made under this Act; and
(2) Any person who is an affiliate of the insolvent insurer and whose liability obligations to other persons are satisfied in whole or in part by payments made under this Act.

   Comment: The reference to "liability obligations" includes obligations under workers' compensation insurance coverages.
   C. The association and a similar organization in another state shall be recognized as claimants in the liquidation of an insolvent insurer for amounts paid by them on covered claims as determined under this Act or similar laws in other states and shall receive dividends and other distributions at the priority

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

NAIC 540-1                                                                                  Page 13

set forth in [insert reference to provision in state laws comparable to Section 46C of the Insurers Rehabilitation and Liquidation Model Act]. The receiver, liquidator or statutory successor of an insolvent insurer shall be bound by determinations of covered claim eligibility under this Act and by settlements of claims made by the association or a similar organization in another state to the extent such determinations or settlements satisfy obligations of the Association. The receiver shall not be bound in any way by such determinations or settlements to the extent there remains a claim against the insolvent insurer. The court having jurisdiction shall grant the claims priority equal to that which the claimant would have been entitled against the assets of the insolvent insurer in the absence of this Act.

    D. The association shall periodically file with the receiver or liquidator of the insolvent insurer statements of the covered claims paid by the association and estimates of anticipated claims on the association which shall preserve the rights of the association against the assets of the insolvent insurer.

12. Exhaustion of Other Coverage

    A. Any person having a claim against an insurer whether or not the insurer is a member insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his or her right under the policy. An amount payable on a covered claim under this Act shall be reduced by the amount of recovery under the insurance policy.
    B. A person having a claim which may be recovered under more than one insurance guaranty association or its equivalent shall seek recovery first from the association of the place of residence of the insured, except that if it is a first party claim for damage to property with a permanent location, the person shall seek recovery first from the association of the location of the property. If it is a workers' compensation claim, the person shall seek recovery first from the association of the residence of the claimant. A recovery under this Act shall be reduced by the amount of recovery from another insurance guaranty association or its equivalent.

Comment: This subsection does not prohibit recovery from more than one association, but it does describe the association to be approached first and then requires that any previous recoveries from like associations must be set off against recoveries from this association.

13. Prevention of Insolvencies

  To aid in the detection and prevention of insurer insolvencies:
    A. The board of directors may, upon majority vote, make recommendations to the commissioner on matters generally related to improving or enhancing regulation for solvency.
    B. At the conclusion of any domestic insurer insolvency in which the association was obligated to pay covered claims, the board of directors may prepare a report on the history and causes of the insolvency, based on the information available to the association and submit the report to the commissioner.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

NAIC 540-1    Page 14

### 14. Examination of the Association

The association shall be subject to examination and regulation by the commissioner. The board of directors shall submit, not later than March 30 of each year, a financial report for the preceding calendar year in a form approved by the commissioner.

### 15. Tax Exemption

The association shall be exempt from payment of all fees and all taxes levied by this state or any of its subdivisions except taxes levied on real or personal property.

### 16. Recognition of Assessments in Rates

The rates and premiums charged for insurance policies to which this Act applies shall include amounts sufficient to recoup a sum equal to the amounts paid to the association by the member insurer less any amounts returned to the member insurer by the association. Rates shall not be deemed excessive because they contain an amount reasonably calculated to recoup assessments paid by the member insurer.

Comment: Although generally rates are prospective in nature, this section would permit recoupment of amounts assessed in the past.

### 17. Immunity

There shall be no liability on the part of, and no cause of action of any nature shall arise against a member insurer, the association or its agents or employees, the board of directors, or any person serving as an alternate or substitute representative of any director,' or the commissioner or the commissioner's representatives for any action taken or any failure to act by them in the performance of their powers and duties under this Act.

### 18. Stay of Proceedings

All proceedings in which the insolvent insurer is a party or is obligated to defend a party in any court in this state shall, subject to waiver by the association in specific cases involving covered claims, be stayed for six (6) months and additional time that may be determined by the court from the date the insolvency is determined or an ancillary proceeding is instituted in the state, whichever is later, to permit proper defense by the association of all pending causes of action. As to covered claims arising from a judgment under decision, verdict or finding based on the default of the insolvent insurer or its failure to defend an insured, the association, either on its own behalf or on behalf of an

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

insured, may apply to have the judgment, order, decision, verdict or finding set aside by the same court or administrator that made the judgment, order, decision, verdict or finding and shall be permitted to defend the claim on the merits.

The liquidator, receiver or statutory successor of an insolvent insurer covered by this Act shall permit access by the board or its authorized representative to the insolvent insurer's records which are necessary for the board in carrying out its functions under this Act with regard to covered claims. In addition, the liquidator, receiver or statutory successor shall provide the board or its representative with copies of those records upon the request by the board and at the expense of the board.

Legislative History (all references are to the Proceedings of the NAIC).

1970 Proc. I 218, 252, 253-262, 298 (adopted).

1972 Proc. I 15, 16, 443, 477-478, 479-480 (amended).

1973 Proc. I 9, 11, 140, 154, 155-157 (amended).

1973 Proc. II 18, 21, 370, 394, 396 (recoupment formula adopted).

1979 Proc. I 44, 46, 126, 217 (amended).

1981 Proc. I 47, 50, 175, 225 (amended).

1984 Proc. I 6, 31, 196, 326, 352 (amended).

1986 Proc. I 9-10, 22, 149, 294, 296-305 (amended and reprinted).

1986 Proc. II 410-411 (amendments adopted later printed here).

1987 Proc. I 11, 18, 161, 421, 422, 429, 450-452 (amended).

1993 Proc. 2nd Quarter 12, 33, 227, 600, 602, 621 (amended).

1994 Proc. 4th Quarter 17, 26, 566, 576, 579-589 (amended and reprinted).

1996 Proc. 1st Quarter 29-30, 123, 564, 570, 570-580 (amended and reprinted).

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works