UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| MANOR CARE OF AMERICA, INC.<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>PROPERTY & CASUALTY INSURANCE<br>　GUARANTY CORPORATION,<br><br>　　　　　　　　　　　Defendant. | Civil Action No.<br>02-CV-04206 (BEL) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MANOR CARE'S MOTION TO COMPEL AND FOR SANCTIONS

Manor Care of America, Inc. ("Manor Care") submits this motion to compel and for sanctions to request that the Court direct the Property & Casualty Insurance Guaranty Corporation ("PCIGC") to respond to the questions left unanswered in the deposition of the key employee PCIGC identified in its interrogatory responses and to impose sanctions against counsel for PCIGC, Mr. Mezzanotte, pursuant to Fed. R. Civ. P. 37.

Between 1993 and 1997, Manor Care was insured by the PHICO Insurance Company ("PHICO"). In 2002, PHICO became insolvent and, pursuant to Maryland statute, the PCIGC assumed certain responsibilities to provide continuing coverage for claims that were asserted against Manor Care. The statute establishing the PCIGC clearly indicates that its purpose is to provide a mechanism for the prompt payment of covered claims under certain insurance policies and to avoid financial loss to residents of the state who are policyholders of an insolvent insurer. The PCIGC asserts that it has no statutory duty to provide coverage to Manor Care.

In order to place this case in a posture to be decided by summary judgment, the plaintiff pursued a very focused and limited course of discovery which included nine interrogatories and seven requests for production of documents. The first interrogatory requested the PCIGC to identify all persons who had factual knowledge of the allegations in the complaint. The only person that the defendant identified was Deborah Price. Since she was the sole employee identified with knowledge concerning this lawsuit, her deposition was scheduled for July 11, 2003. In complete disregard of the Federal Rules of Civil Procedure and the local rules of this Court, throughout the Price deposition, the defendant's attorney, Albert Mezzanotte, inappropriately impeded the discovery process by instructing Ms. Price not to answer several questions posed by counsel for Manor Care. More significantly, Mr. Mezzanotte's sarcastic remarks to counsel *and* discourteous comments to the court reporter evidence an unprofessional and uncivil attitude that is not tolerated by this Court. *See Freeman v. Schointuck*, 192 F.R.D. 187, 188-90 (D. Md. 2000).

The cavalier and unprofessional conduct of Mr. Mezzanotte during the deposition of Ms. Price should not be condoned by this Court. Sanctions, including striking PCIGC's denial that the claims at issue in this case are "covered claims" under the Maryland statute, (*see* Answer of PCIGC at ¶¶ 1, 4), fees and costs incurred by Manor Care in taking the July 11, 2003 Price deposition, fees and costs incurred by Manor Care in taking a second deposition of Ms. Price in which she answers the questions not answered in the first deposition, and the fees and costs incurred in bringing this motion, should be awarded.

I.    **Mr. Mezzanotte's Instruction Not to Answer Was Improper and Sanctionable**

Under the Federal Rules of Civil Procedure, Manor Care is entitled to obtain broad discovery on any issue that is reasonably calculated to lead to the discovery of admissible

2

evidence. *See* Fed. R. Civ. P. 26(b). Furthermore, "[i]t has been the law in this circuit for 20 years that lawyers may not instruct witnesses not to answer questions during a deposition unless to assert a privilege." *See Boyd v. University of Maryland Med. Sys.*, 173 F.R.D. 143, 144 (D. Md. 1997) (citing *Ralston Purina Co. v. McFarland*, 550 F.2d 967 (4th Cir. 1977). Despite the codification of this law in the federal rules, it "has proven to be a recurring problem." *Id.*; *see also* Fed. R. Civ. P. 30(d)(1). As a result, this Court adopted Discovery Guideline 5 which provides that "it is presumptively improper to instruct a witness not to answer a question during the taking of a deposition unless under the circumstances permitted by Fed. R. Civ. P. 30(d)(1)." *Id.* at 146 (quoting D.Md. Discovery Guideline 5(d)).

A court shall impose sanctions for a violation of the discovery rules unless sanctions would be unjust. *See* Fed. R. Civ. P. 37(a)(4). If an attorney instructs a witness not to answer a question, the Court will assess the following factors to determine the appropriateness of sanctions: (1) the importance of the requested information to the issues in the litigation; (2) the number of times the attorney instructed the witness not to answer; (3) whether the question that prompted the instruction was objectionable; (4) whether the instruction not to answer was made in a sincere, but misguided, effort to preserve an objection and not disrupt the deposition; and (5) whether the attorney providing the instruction had advanced notice of the likelihood of potentially objectionable questions and whether a protective order was sought. *Boyd*, 173 F.R.D. at 147. Despite these guidelines, an instruction not to answer a question that is reasonably related to the litigation is presumptively improper and sanctions will likely be appropriate. *Id.*[1] A court has broad discretion to fashion a sanctions award which properly addresses and discourages inappropriate conduct, including paying the fees and costs of the initial deposition

3

and reconvening the deposition, costs and fees incurred in filing the motion to compel, requiring counsel to write a letter of apology and take a professionalism course, and even dismissal of the case. *See* Fed R. Civ. P. 37; *see also Costar Group v. Loopnet, Inc.*, 106 F. Supp. 2d 780, 781-82 (D. Md. 2000) (granting costs and fees incurred in retaking deposition and filing motion to compel); *Freeman*, 192 F.R.D. at 190 (requiring a letter of apology, return of sanctions award and attendance at a professionalism course for uncivil conduct at a deposition); *Boyd*, 173 F.R.D. at 20-21 (requiring payment of costs and fees of reconvening the deposition); *Carter v. Prince George's County, Maryland*, 155 F.R.D. 128, 130 (D. Md. 1994) (granting dismissal for failure to cooperate in fundamental aspects of discovery).

Mr. Mezzanotte repeatedly instructed Ms. Price not to answer questions that related to the assessment process that funds the PCIGC. As PCIGC is well aware, Manor Care contends that it is entitled to payment from PCIGC because PHICO premium dollars were paid into the fund during the time that Manor Care was a PHICO policyholder. However, when Ms. Price was asked questions about the assessment procedure, she was specifically instructed by Mr. Mezzanotte not to answer the questions on the grounds that Mr. Mezzanotte did not consider these questions to be relevant. Mr. Mezzanotte also instructed Ms. Price not to answer questions about how the PCIGC handled other insolvencies.

As an example, Ms. Price was instructed not to respond to a question regarding whether PCIGC made an assessment for the "all other account" for the period 1993 to the present. Transcript of the Deposition of Ms. Deborah Price, July 11, 2003, at 33, attached hereto as Exhibit 1 ("Price Depo."). Mr. Mezzanotte would not allow Ms. Price to answer the question

---

[1] Although it is improper for counsel to ask irrelevant questions, the appropriate recourse is not refusing to answer, but either a pre-deposition protective order or postponing the deposition pursuant to Fed. R. Civ. P. 30(d)(3). *See Boyd*, 173 F.R.D. at 145-46. Mr. Mezzanotte took neither course in this matter.

4

because he decided that counsel for Manor Care had not appropriately proven to Mr. Mezzanotte the relevance of the question:

> **Mr. Mezzanotte**: ... you can't just probe because you happen to think you might stumble upon some fact that maybe might in some possible way help you, so you tell me why you need that information and I'll consider it. Or if you want to play the same game that you did before and sit there and stare at me, then go ahead, but she's not going to answer the question.

Price Depo. at 35-36.

In fact, Manor Care *is* allowed to ask questions that "might in some possible way" help its case as long as the questions are relevant to claims or defenses. Manor Care's counsel need not receive Mr. Mezzanotte's seal of approval for each question posed, and is entitled to ask any question that is reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b). Indeed, the questions posed by Manor Care's attorney were extremely relevant to the PHICO insolvency and PCIGC's statutory obligation to avoid financial loss to policyholders of PHICO -- a central issue in this litigation.

Since the information sought may lead to admissible evidence, Mr. Mezzanotte's instruction not to answer was presumptively improper. Counsel are not permitted to use antagonistic antics to thwart discovery. *See Boyd*, 173 F.R.D. at 145-47. Since Mr. Mezzanotte directed on at least three occasions that Ms. Price not answer questions until Manor Care's attorney proved their relevance to him, which relevance was apparently not proven to Mr. Mezzanotte's satisfaction, his direction to the witness not to answer should result in an award of sanctions. (Price Dep. at 18, 27, 34-36.) As a result, PCIGC should be required to pay for the fees and costs incurred in taking the July 11, 2003, deposition of Ms. Price, PCIGC should be required to pay the fees and costs of taking a second deposition of Ms. Price in which she answers the questions posed to her, and additional sanctions should be awarded against PCIGC and Mr. Mezzanotte to discourage this improper behavior. Such additional sanctions should

5

include a monetary penalty against Mr. Mezzanotte personally and striking PCIGC's denial that the claims at issue in this litigation are "covered claims" under the relevant Maryland statute, (*see* Answer of PCIGC, ¶¶ 1, 4). *Boyd*, 173 F.R.D. at 20-21; *Carter*, 155 F.R.D. at 130.

## II. Mr. Mezzanotte's Conduct Was Otherwise Sanctionable

Mr. Mezzanotte's sarcastic and discourteous remarks to counsel for Manor Care and the court reporter also warrant sanctions. Pursuant to Local Rule 606, "[t]he Court expects all of its judges and all counsel to conduct themselves in a professional and courteous manner in connection with all matters pending before this Court." A similar local rule requires all attorneys to behave professionally and with courtesy towards *all involved* in the discovery process. D. Md. Discovery Guideline 1(c) (emphasis added). An attorney who violates these rules is subject to sanctions. *See Freeman*, 192 F.R.D. at 188-200.

As demonstrated in the following exchange, Mr. Mezzanotte's disrespectful behavior towards the court reporter at the deposition of Ms. Price was unacceptable:

> **Mr. Mezzanotte:** Well, if she doesn't know anything about the Bandera claim, how would she know who knows about the Bandera claim? Come on, counsel. That's ridiculous... Wait a minute. Okay? You asked me a question. Now, unlike you, I'll answer your question... are you shushing me?
>
> **The Court Reporter:** Sir, I am not going to be subjected to your screaming. I'm really sorry.
>
> **Mr. Mezzanotte:** Well, that's not your choice, ma'am.
>
> **The Court Reporter:** Yes, it is.
>
> **Mr. Mezzanotte:** I'm sorry. Your job is to take down --
>
> **The Court Reporter:** It is my choice.
>
> **Mr. Mezzanotte:** --what I say.
>
> **The Court Reporter:** Not in this climate. I will take this (indicating) somewhere. I've got this right on tape. I am not going to be subjected to your screaming.
>
> **Mr. Mezzanotte:** I'm not screaming --
>
> **The Court Reporter:** Thank you.

> **Mr. Mezzanotte:** -- and the tape, rather, will reflect that. Can you read back what I said, please, because I've lost my train of thought.

(Price Dep. at 38-40.) Discourteous remarks by counsel to Court personnel are not permitted.

See *Freeman*, 192 F.R.D. at 188-200.

Mr. Mezzanotte's ire was also directed towards counsel for Manor Care, Mr. Kowalski.

Mr. Mezzanotte repeatedly interjected sarcastic and antagonistic remarks aimed at Mr. Kowalski.

The following exchange is illustrative:

> **Mr. Mezzanotte:** Is there a point to this, by the way? Sir, is there a point to this?
>
> **Mr. Kowalski:** Do you have an objection? I want to hear --
>
> **Mr. Mezzanotte:** Yeah, I do. What, what, what does it have to do with anything? What does any of this have to do with anything to do with this case? It's a simple case. You claim your client was a resident of Maryland. We say they're not. You're asking her about meetings and all kinds of goofy things that are just wasting everybody's time. Get to a point, for God's sake...
>
> **Mr. Kowalski:** Do you remember any other insolvencies that --
>
> **Mr. Mezzanotte:** Hey. She's not answering a question until you tell me what the point is. This isn't a guessing game or a memory contest...
>
> **Mr. Kowalski:** Are you instructing her not to answer?
>
> **Mr. Mezzanotte:** I'm telling you, she's not answering anything till you tell me what it has to do with the case so we can move forward... Counsel, ignoring me is not going to move the ball, so you tell me what it has to do with anything and I'll be happy to cooperate in any way I can. But thus far, it is so mysterious, and I've been doing this for 20 some years. I confess, I can learn something new, but this is really out in left field. Well, I guess we're through if you're going to sit there, giving me stony silence and staring [at] me like I'm supposed to be scared or something. You don't intimidate me, sir, so do you want to discuss this further or are we through?

Price Depo. at 26-28.

Mr. Mezzanotte's tirades throughout the deposition of Ms. Price are outrageous and unacceptable. Not only was Mr. Mezzanotte discourteous to court personnel and opposing counsel, but he unnecessarily limited the deposition based upon his own skewed views of relevance. The Court should impose sanctions against Mr. Mezzanotte to prevent further

7

"systematic and deliberate abuses… that are destructive of the very fabric which holds together the process of pretrial discovery -- cooperative exchange of information without the need for constant court intervention." *Freeman*, 192 F.R.D. at 189.

## CONCLUSION

The Court should grant Manor Care's motion to compel and for sanctions, and should order that a second deposition of Ms. Price be taken at PCIGC's cost so that Ms. Price's answers to relevant questions can be recorded. Additional sanctions should also be awarded, including the striking of PCIGC's denial that the claims at issue in this case are "covered claims" under the Maryland statute, (*see* Answer of PCIGC at ¶¶ 1, 4), the fees and costs incurred by Manor Care in taking the July 11, 2003 Price deposition, and the fees and costs incurred in bringing this motion.

Dated: September 5, 2003

Respectfully Submitted,

_____/s_____
James H. Hulme (Bar No. 00875)
Deanne M. Ottaviano (Bar No. 15659)
ARENT FOX KINTNER PLOTKIN
    & KAHN, PLLC
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 857-6000
Facsimile: (202) 857-6395

Gerald R. Kowalski
Cooper & Walinski
900 Adams Street
Toledo, Ohio 43624
Telephone: (419) 241-1200
Facsimile: (419) 242-9606

*Counsel for Manor Care of America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of September, 2003, I caused the foregoing Memorandum of Points and Authorities in Support of Manor Care's Motion to Compel and for Sanctions to be served electronically and/or by regular U.S. mail upon the following:

Edward M. Buxbaum, Esq.
Albert J. Mezzanotte, Jr., Esq.
Whiteford Taylor & Preston
Seven Saint Paul St. Ste 1400
Baltimore, Maryland 21202


　　　　　　　　　　　　　　　　　/s
　　　　　　　　　　　　　　Deanne M. Ottaviano