IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| MANOR CARE OF AMERICA, INC. | * | |
|    Plaintiff | * | |
| v. | * | Civil Action No.:   L02CV4206 |
| PROPERTY & CASUALTY INSURANCE GUARANTY CORPORATION | * | |
| | * | |
|    Defendant | | |
| | * | |

\* \* \* \* \*   \* \* \* \* \*

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL AND FOR SANCTIONS**

Now comes Defendant Property & Casualty Insurance Guaranty Corporation (hereinafter "PCIGC") by its undersigned counsel, and hereby opposes Plaintiff's Motion to Compel and for Sanctions, and states as follows:

**I.   INTRODUCTION**

The instant declaratory judgment action arises out of a rather straightforward and narrow insurance coverage dispute between the parties. The Defendant, PCIGC, is a statutorily created fund designed to avoid financial loss, under specific circumstances, to Maryland residents who are claimants or policy holders of an insolvent insurer. The Maryland legislature, however, did not create the Defendant to provide bureaucratic benevolence. Rather, PCIGC's obligation to provide coverage is triggered if, but only if, the loss at issue constitutes a "covered claim" as statutorily defined. Md. Code Ann., Ins. § 9-301(d) (1997). One of the requisite elements of a

"covered claim" is that the claimant or policy holder must be a resident of the State of Maryland, at the time that coverage is sought from PCIGC.

In this case, as made clear in Plaintiff's own Complaint, at the time that Manor Care presented certain claims to PCIGC for coverage as a result of the insolvency of its medical malpractice insurer, PHICO, Manor Care was not a resident of Maryland. While conceding this critical fact, the Plaintiff argues that because PHICO made assessment payments to Defendant during the limited time period that Plaintiff was both a PHICO insured and a Maryland resident (1993 through 1997) Manor Care should be deemed to have satisfied the residency requirement. See Joint Discovery Plan at p. 5. Obviously, the Defendant's position in this litigation is that PHICO's payment of assessments is immaterial to the threshold question of whether the Plaintiff is a current resident of the State of Maryland.

Given the narrow scope of the coverage dispute, the parties agreed at the outset of this litigation to the phased discovery plan. Specifically, as made clear in the Court approved Joint Discovery Plan, discovery would proceed in a bifurcated fashion, with "discovery for a first phase of the litigation aimed at resolving the issue of whether Manor Care's claims are "covered claims" pursuant to Maryland [Insurance] Code in § 9-301(d)." Joint Discovery Plan at p. 2. The parties further agreed that any discovery issues beyond the threshold "covered claim" dispute would be taken up, if necessary, only in a second phase of discovery subsequent to the Court's consideration of dispositive motions. *Id.*

Consistent with that limited, initial discovery agreement, Plaintiff's counsel propounded Interrogatories and several document requests regarding the assessment process. Further, in the Joint Discovery Plan, Plaintiff's counsel advised both the Defendant and the Court that Manor Care would take a deposition of PCIGC personnel in the first phase of discovery limited to: (1) PHICO's membership in PCIGC; (2) PHICO's assessments and payments to PCIGC; (3) PCIGC's refunds to PHICO from 1993 through 1997; (4) PCIGC's knowledge regarding whether "a portion" of the Plaintiff's insurance premiums paid to PHICO during the period 1993 through 1997 were ultimately passed onto PCIGC; (5) "other issues" related to the financial relationship between PHICO and PCIGC. See Joint Discovery Plan at p. 4.

It is the Plaintiff's failure to adhere to the commitment to participate in limited, targeted discovery that is at the heart of this discovery dispute. Specifically, in contradiction to the prior agreement to participate in limited, targeted discovery, Plaintiff's counsel unilaterally attempted to expand the scope of discovery at the deposition of Deborah Price, a PCIGC employee knowledgeable about the assessment process. Plaintiff's questioning of Ms. Price went far beyond the assessment process and the "minimal targeted discovery" previously agreed to. As such, defense counsel properly instructed the witness not to respond to a limited number of deposition questions that grossly and improperly exceeded the scope of discovery previously agreed to. Further, and perhaps more fundamentally, because the filing of Plaintiff's Motion, in the absence of the required certificate documenting any good faith attempt to resolve this matter, violates both Rule 37(a)(2) of the Federal Rules of Civil

3

Procedure, as well as Local Rule 104.7, the Motion can not be considered by this Court. For these reasons, Plaintiff's Motion to Compel and For Sanctions must be denied.

## II.   ARGUMENT

### A. The Filing of Plaintiff's Motion to Compel and For Sanctions, In the Absence of Any Pre-filing Attempt to Resolve the Discovery Dispute, Violates Both Rule 37(a)(2) of the Federal Rules of Civil Procedure and Rule 104.7 of the Local Rules and As Such, Cannot be Considered by this Court

As this Court has made clear in its establishment of the Local Rules with regard to discovery disputes, the aggrieved party is required, **prior** to the filing of a Motion to Compel, to meet with opposing counsel and "make sincere attempts to resolve the differences between them". Local Rule 104.7. See also Federal Rule of Civil Procedure 37(a)(2) (Motion to Compel must include a certification that the movant has in good faith conferred to attempted to confer with the party failing to make the discovery). The Local Rule further provides that "[t]he Court **will not consider** any discovery motion unless the moving party has included in its motion a certificate reciting (a)  the date, time and place of the discovery conference, the names of all persons participating therein and any issues remaining to be resolved, or (b)  counsel's attempts to hold such a conference without success." *Id.* (emphasis added).

Plaintiff's District of Columbia and Ohio counsel, having apparently never bothered to familiarize themselves with the Local Rules of this Court, filed this Motion to Compel without having participated in the requisite discovery conference and accordingly, were in no position to provide the requisite certification regarding such a conference. Indeed, Plaintiff's counsel declined to participate in such a discussion as

4

requested by defense counsel at the conclusion of the deposition of Ms. Price. See Deposition of Deborah Price (attached as an Exhibit to Plaintiff's Motion) at pp. 59-60.

The policy underlying both the applicable Federal Rule and Local Rule 104.7 is neither complicated nor mysterious. These Rules were written to require counsel to attempt to avoid needless discovery disputes and to refrain from unnecessarily involving the Court in such matters unless the parties had fully explored the potential for resolution on their own. In complete contradiction to the required procedure, Plaintiff improperly elected to simply file the Motion to Compel without any attempt at resolution. Having fragrantly violated Local Rule 104.7, it is clear that the Court is compelled to refrain from consideration of Plaintiff's Motion.

Moreover, Plaintiff's violation of both the letter and spirit of the applicable Rules cannot be rectified with an *ex post facto* attempt at compliance. The alleged "sanctionable conduct" occurred on July 11, 2003. The discovery guidelines of this Court make clear that an aggrieved party is obligated, after a good faith attempt to resolve the discovery dispute fails, to "promptly" refer the matter to the Court for resolution. See Discovery Guideline 1(e) of the Discovery Guidelines of the United States District Court for the District of Maryland. Consistent with its flouting of local practice, the Plaintiff saw fit to do absolutely nothing while the July 16, 2003 discovery cutoff came and went. Thus, having intentionally delayed resolution of this "dispute" for nearly two months and allowing the discovery cutoff to pass, Plaintiff cannot now

use its own dilatory tactics as an excuse to revisit discovery related matters.[1]  Plaintiff's transparent intent to delay resolution of this matter is underscored by its counsel's inexcusable failure to even participate in a good faith attempt to resolve the existing dispute at the July 11, 2003 deposition.

In sum, having fragrantly violated both Rule 37(a)(2) of the Federal Rules of Civil Procedure and Rule 104.7 of the Local Rules without justification, and having intentionally delayed in bringing this matter to the Court's attention until after the close of discovery, Plaintiff's Motion to Compel and For Sanctions must be summarily dismissed.  Moreover, had counsel for the Plaintiff bothered to read the pertinent Local Rules, the Defendant would not have had to expend the time and effort necessary to respond to a Motion that should never have been filed.  As such, consistent with Rule 37(a)(4)(B) of the Federal Rules of Civil Procedure, the Defendant seeks all costs associated with the filing of this Opposition, including its reasonable attorneys' fees.

**B.     The Instructions of Defense Counsel for the Deponent Not to Respond to Certain Deposition Questions, Given the Agreed Upon Narrow Scope of "Phase One" of Discovery, Were Entirely Proper**

Although Plaintiff's failure to comply with Rule 37(a)(2) of the Federal Rules of Civil Procedure and Local Rule 104.7 constitutes sufficient grounds, in and of itself, to mandate dismissal of Plaintiff's Motion to Compel, the Defendant will address

---

[1]  Apparently, Plaintiff decided to wait until the Defendant filed its Motion for Summary Judgment to bring this matter to the Court's attention either in an ill-conceived attempt to discredit Defendant's counsel while the Defendant's Motion for Summary Judgment was pending or to "buy" additional time for discovery.  Regardless of Plaintiff's motivation for delay, such gamesmanship should not be tolerated by this Court.

herein the propriety of counsel's instructions to the deponent not to respond to certain inappropriate deposition questions posed by Plaintiff's counsel. As previously discussed, the parties agreed, and the Court approved, a very limited and narrow scope of initial discovery focused solely on whether certain assessments levied by the Defendant upon the Plaintiff's now insolvent insurer during the time period 1993 through 1997 would somehow allow Plaintiff to satisfy the residency requirement mandated by § 9-301(d). Consistent with that agreement, the Plaintiff propounded various written discovery, timely responded to by the Defendant, with regard to the assessment process. In those responses, the Defendant advised Plaintiff that one of its employees, Deborah Price, was generally knowledgeable about the assessment process during the pertinent timeframe. Thereafter, Plaintiff requested and Defendant agreed to produce Ms. Price for deposition.

During the course of the deposition of Ms. Price, however, Plaintiff's counsel asked numerous questions which far exceeded the limited scope of discovery previously agreed to. Specifically, the deponent was instructed not to answer deposition questions that either dealt with insolvencies wholly unrelated to PHICO; sought information far beyond the bounds of relevancy as previously agreed to; or required the disclosure of confidential financial information wholly unrelated to either PHICO or Manor Care. Accordingly, each of the instructions not to answer such questioning was appropriate and cannot justify the relief sought by Plaintiff.

Manor Care grounds its Motion upon Discovery Guideline 5 promulgated by this Court, which is quoted in part in Plaintiff's Motion to support its argument that

it is "presumptively improper" to instruct a witness not to answer deposition questions in the absence of an assertion of privilege. Plaintiff conveniently omits, however, the very next sentence set forth in Discovery Guideline 5, which provides that **"it is also presumptively improper to ask questions clearly beyond the scope of discovery. . ."** Having agreed far in advance of the deposition of Ms. Price to a limited scope of discovery concerning the assessments initiated by the Defendant during the period 1993 through 1997 related to PHICO, the Plaintiff is not free to attempt a unilateral expansion of the scope of "limited, targeted discovery" and then complain to this Court when caught.

Specifically, when Plaintiff's counsel requested that the deponent list every insolvency that PCIGC is currently "dealing with" **other than PHICO**, such an inquiry was clearly beyond the narrow scope of discovery previously agreed to and as such, the inquiry was patently improper. See Price Deposition at pp. 26-27. Having provided Plaintiff's counsel with some latitude by allowing the witness to provide a list of thirteen other insolvencies, defense counsel properly objected and instructed witness not to answer further as the question clearly exceeded the prior agreed upon scope of discovery. Further, the Defendant notes that its counsel instructed the deponent not to respond until Plaintiff's counsel could explain what the question "had to do with the case." Not surprisingly, given the clear lack of relevance, Plaintiff's counsel declined to provide any basis for the propriety of such questioning. Price Deposition at p. 27.

Similarly, when Plaintiff's counsel made inquiry regarding certain assessments made by PCIGC from 1993 **to the present** (Price Deposition at p. 34),

8

defense counsel properly objected and instructed the witness not to answer, as any assessment related information subsequent to 1997 (the last year the Plaintiff was a PHICO insured) was clearly beyond the scope of the agreed upon discovery. When PCIGC's counsel made clear that the proper timeframe for the inquiry must be limited to the period 1993 through 1997, Plaintiff's counsel properly rephrased his question, and the deponent was allowed to respond. *Id.* at 34-36.

Finally, when Plaintiff's counsel asked about PCIGC's board meetings, refunds to troubled carriers not limited to PHICO and PCIGC assessments related to motor vehicle and title insurance coverages, coverages which PHICO did not provide to Manor Care, such inquiries were clearly beyond the scope of the agreed upon limited discovery and sought confidential and privileged information. Accordingly, the instructions not to answer were entirely appropriate. See Price Deposition at p. 45, 54.

Simply put, having agreed in the Joint Discovery Plan to a limited scope of discovery, Plaintiff's counsel cannot be heard to complain at this juncture as a result of the Defendant's insistence that the agreement be followed. As each and every instruction not to respond fully complied with Discovery Guideline 5, the Motion to Compel is devoid of merit.

### C. Plaintiff's Request for Sanctions is Untenable

Not content to untimely file a baseless Motion to Compel that violated Federal Rule of Civil Procedure 37(a)(2) and Local Rule 104.7, the Plaintiff goes on to suggest to this Court that as a result of alleged "discovery abuses", the Defendant should, *inter alia*, be precluded from denying that Plaintiff's claims are not "covered

claims" as statutorily defined, thus arguing for a default judgment against the Defendant as a result of counsel's limited instructions not to answer certain deposition questions. In a word, Plaintiff's request is ridiculous.

To support its position, the Plaintiff cites to *Carter v. Prince George's County, Maryland* 155 F.R.D. 128 (D. Md. 1994). In *Carter*, the plaintiff had twice failed to appear for a duly noted deposition, had failed to answer any written discovery, and had failed to respond to a court directive to provide a written status report. Id. at 129-30. Obviously, that repetitive pattern of discovery failure justifying the ultimate sanction of dismissal has no applicability to the instant case.

Rather, it has long been held that the district court should use "draconian remedies" for alleged discovery violations only in extreme circumstances. See, e.g. *Bonaventure v. Butler*, 593 F.2d 625 (5th Cir. 1979); *Griffin v. Aluminum Company of America*, 564 F.2d 1171 (2d Cir. 1977); *Israel Aircraft Industries, Ltd. v. Standard Precision*, 559 F.2d 203 (2d Cir. 1977). Where, as here, the limited instructions not to respond to questions patently beyond the previously agreed upon scope of discovery hardly constitutes a longstanding and repetitive pattern of discovery failure, or "extreme circumstances" so as to justify the draconian remedy suggested by Plaintiff. Indeed, the Plaintiff cites to no cases, nor could the Defendant locate any such decisions, where a court precluded a party from asserting a defense at trial as a result of instructions to a

witness not to answer specific deposition questions.[2]  Clearly, Plaintiff's request for such relief is unsupportable.

As for the Plaintiff's request to re-depose Ms. Price,[3] the Defendant can only respond by stating that Plaintiff's counsel was provided the opportunity by defense counsel at the deposition to discuss the objections asserted in an attempt to resolve all disputes in a timely fashion.[4]  Having decided to ignore his obligation to engage in such discussions and waiting, for perceived tactical advantage, until long after discovery closed and a dispositive motion has been filed, Plaintiff's counsel's gamesmanship should not be rewarded.  Simply put, the time to address this dispute and complete discovery has come and gone.

Finally, as to Plaintiff's request that counsel for the Defendant should be sanctioned for "sarcastic and antagonistic remarks" during the deposition, this Court has made clear the distinction between expected "isolated acts of discourtesy or loss of temper" in an adversarial deposition and "systematic and deliberate acts" of abuse. *Freeman v. Schointuck*, 192 F.R.D. 187 (D. Md. 2000)  While the latter conduct is sanctionable, the former is not. *Id.* at 189.

---

[2]  Consistent with the Plaintiff's lack of support, the Defendant notes that pursuant to Local Rule 106.8, Motions for Sanctions shall "not be filed as a matter of course" and further, that the Court "will consider inappropriate cases imposing sanctions upon parties who file unjustified sanctions motions".  Where, as here, the Plaintiff's motion is wholly devoid of merit, was filed without the requisite certificate required by Local Rule 104.7 and was clearly pursued for perceived tactical advantage long after the discovery cut-off, the Defendant respectfully requests that this Court impose sanctions on the Plaintiff pursuant to Local Rule 106.8.

[3]  Plaintiff seeks costs against PCIGC associated with the need for a second deposition of Ms. Price.  In addition to all of the substantive failings of Plaintiff's Motion as addressed herein, PCIGC is immune from any such liability pursuant to Md. Code Ann. Ins. 9-314 (1997).

[4]  See Price Deposition at pp. 59-60.

11

Indeed, this Court need look no further than the *Freeman* case and the fifty-three (53) separate instances of discovery abuse cited therein as evidence of the type of systematic pattern of discovery abuse required to justify the imposition of sanctions. In contrast to the behavior described in *Freeman*, the isolated conduct of defense counsel, triggered by Plaintiff's attempts to circumvent the previous agreement limiting discovery, hardly constitutes a systematic and deliberate pattern of abuse.

To the extent that defense counsel, frustrated at the unilateral attempts to expand discovery and the clear effort to "sandbag" counsel and the deponent, displayed temper, counsel apologized at the deposition by stating as follows:

> [I]f I have raised my voice inappropriately, I apologize to everyone in the room, but I am frustrated because you know what the court reporter may not know which is none of this has anything to do with our case and so I feel you are subjecting this witness inappropriately to this kind of display and you are trying to embarrass her and intimidate her and that's totally improper. We don't do that.

Price Deposition at p. 42. Accordingly, having already apologized on the record for the isolated loss of temper, no further action is required by this Court.

### III. CONCLUSION

For the aforegoing reasons, Plaintiff's Motion to Compel and For Sanctions must be denied.

Respectfully submitted,

_____/s/_____
Albert J. Mezzanotte, Jr., Bar No. 00197
Edward M. Buxbaum, Bar No. 05015
Whiteford, Taylor & Preston L.L.P.
Wachovia Tower – Suite 1200
Seven Saint Paul Street
Baltimore, Maryland 21202-1626
(410) 347-8700
   Attorney for Defendant,
   Property & Casualty Insurance
     Guaranty Corporation

CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this **16th** day of **September, 2003**, a copy of Defendant's Opposition to Plaintiff's Motion to Compel and For Sanctions was mailed first class, postage prepaid to:

Deanne M. Ottaviano, Esquire
Deborah L. Givens, Esquire
Arent Fox Kintner Plotkin & Kahn, PLLC
1050 Connecticut Ave., NW
Washington, D.C. 20036-5339
*Attorneys for Plaintiff*

Gerald R. Kowalski, Esquire
Jodi D. Spencer, Esquire
Cooper & Walinski
900 Adams Street
Toledo, Ohio 43624
*Attorneys for Plaintiff*

_____/s/_____
Edward M. Buxbaum

1514247

13

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| MANOR CARE OF AMERICA, INC. | * | |
| Plaintiff | * | |
| v. | * | Civil Action No.:   L02CV4206 |
| PROPERTY & CASUALTY INSURANCE GUARANTY CORPORATION | * | |
| | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \*

### **ORDER**

Upon consideration of Plaintiff's Motion to Compel and Request for Sanctions, and Defendant's Opposition thereto, IT IS THIS _____ day of _____, 2003, hereby ORDERED that the Plaintiff's Motion be, and same hereby is DENIED and it is further ORDERED, in light of Plaintiff's failure to adhere to Local Rule 104.7 that the Defendant shall be awarded costs in the amount of $_____ as a result of having to file a Response to Plaintiff's improperly filed Motion.

_____
Honorable Benson E. Legg
United States District Court for
   the District of Maryland