## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## NORTHERN DIVISION

| | |
|---|---|
| **MANOR CARE OF AMERICA, INC.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | |
| ) **Civil Action No. L02CV4206** | |
| **PROPERTY & CASUALTY** ) | |
| **INSURANCE GUARANTY** ) | |
| **CORPORATION** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

### Plaintiff's Cross Motion for Summary Judgment

Under Fed. R. Civ. P. 56(a), Plaintiff Manor Care of America, Inc.,

respectfully moves this Court for an order granting summary judgment in its favor.

The reasons and authority in support of this motion are set forth in the attached

Memorandum Opposing Defendant's Renewed Motion for Summary Judgment and

Plaintiff's Cross Motion for Summary Judgment.

Respectfully submitted,

_____/s_____
James H. Hulme (Bar No. 00875)
Deanne M. Ottaviano (Bar No. 15659)
ARENT FOX KLINTNER PLOTKIN &
KAHN, PLLC
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 857-6000
Facsimile:  (202) 857-6395

Gerald R. Kowalski
Jodi D. Spencer
COOPER & WALINSKI, LPA
900 Adams Street
Toledo, Ohio 43624
Telephone:  (419) 241-1200
Facsimile:  (419) 242-9606

*Counsel for Manor Care of America, Inc*

## Memorandum Opposing Defendant's Renewed Motion for Summary Judgment and Supporting Plaintiff's Cross Motion for Summary Judgment

### I.     Introduction

This case arises from the claim of Plaintiff Manor Care of America, Inc. f/k/a Manor Care, Inc. ["Manor Care"] that the Defendant Property and Casualty Insurance Guaranty Corporation ["PCIGC"] has unlawfully and unfairly denied coverage of Manor Care's claims for indemnity and defense, brought under Maryland Annotated Code § 9-301 *et seq* [the Statute].  PCIGC has moved for summary judgment, asserting that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law.  Manor Care agrees that there are no genuine disputes of material fact in the record of this case at this time,[1] but disagrees that PCIGC is entitled to judgment in its favor.

PCIGC claims that Manor Care does not have a "covered claim" under the Statute.  The issue of whether or not Manor Care has "covered claims" is one of statutory construction. PCIGC asserts that to have a "covered claim" under the

---

[1]     Manor Care has been unable to complete even the targeted discovery set forth in the Joint Discovery Plan because of PCIGC's counsel's tactics at the only deposition that has been taken in this case.  See Manor Care's Motion to Compel and for sanctions with Memorandum in Support filed September 5, 2003. If the Court grants the Plaintiff's Motion to Compel, additional facts may be discovered that will impact this motion.

Statute, the insured must *presently* have its principal place of business in Maryland. PCIGC takes this position because the definition of "resident" is "a corporation or entity whose principal place of business is in the State."[2]  PCIGC focuses on the word "is" in that definition and urges the Court to interpret "is" to mean "is presently."

This Court should decline to adopt PCIGC's recommended interpretation of the Statute for several important reasons:

- First, "is" can mean <u>either</u> present or past according to plain meanings;

- Second, the Statute does <u>not</u> say "presently" and other provisions conflict with a present tense interpretation - - the Court needs to consider the Statute as a whole and read all of the sections in conjunction with one another;

- Third, rules of statutory construction require that the Court consider the broad purpose of the Statute -- the current Statute is actually broader than the prior version and the Model Act;

- Fourth, legislative history reveals that there was no intent by the Maryland legislators to give "is" the meaning PCIGC contends; and

- Fifth, the two cases PCIGC relies on are not controlling because they interpret the word "requires" in the Juvenile Causes Act and the phrase "is adapted" in a criminal law prohibiting slot machines;

PCIGC's motion for summary judgment, therefore, must be denied and Manor Care's cross motion for summary judgment should be granted.

## II.    The Undisputed Facts

The record before this Court reflects that the parties agree on the following facts:

---

[2]      Md. Code Ann. § 9-301(h)(2).

1.      Defendant's Property and Casualty Insurance Guaranty Corporation ("PCIGC") is a Maryland corporation created by Statute to provide payment of covered claims where there is an insolvent insurer.[3]

2.      PHICO was authorized to transact insurance business in Maryland between June 1, 1993 and June 1, 1997.[4]

3.      PHICO was a "member insurer" of PCIGC as defined in the Statute.[5]

4.      PHICO issued Manor Care policies of insurance (policy numbers HCL3964) during the period from June 1, 1993 through June 1, 1997.[6]

5.      The insurance policies provided that PHICO will defend and indemnify Manor Care and pay sums Manor Care becomes legally obligated to pay because of bodily injury or property damage occurring during the policy period.[7]

6.      At the time each PHICO policy was issued, and throughout each PHICO policy period, Manor Care was a Delaware Corporation with its principal place of business in Maryland.[8]

7.      Suits have been brought and claims have been made against Manor Care and various of its insured affiliates and subsidiaries for alleged bodily injury or property damage occurring during the policy periods.[9]

---

[3]     Complaint ¶ 4; Answer ¶ 4; *see* Md. Code Ann. § 9-301, et seq.

[4]     Complaint ¶ 13; Answer ¶ 13.

[5]     Complaint ¶ 14; Answer ¶ 14.

[6]     Complaint ¶¶ 1, 7; Answer ¶ 7.

[7]     Complaint ¶¶ 10, 11.

[8]     Complaint ¶¶ 2, 9; Answer ¶ 2.

[9]     Complaint ¶ 12, Answer ¶ 12.

4

8.      Since September 1998, Manor Care has been a Delaware corporation with its principal place of business in Ohio.[10]

9.      On February 1, 2002, the Commonwealth Court of Pennsylvania determined that PHICO was insolvent and ordered it into liquidation.[11]

10.     PHICO is an "insolvent insurer" as defined in Md. Ann. Code § 9-301(e).[12]

11.     PCIGC has the rights, duties and obligations that PHICO would have had if it had not become insolvent.[13]

12.     PCIGC's all other account is solely funded by assessments of the insurance carriers licensed to do business in Maryland.[14]

13.     As an insurance company authorized to do business in the state of Maryland, PHICO was assessed by PCIGC to fund PCIGC's operation.[15]

14.     Manor Care made a demand on PCIGC to defend it and provide coverage but PCIGC has declined coverage for claims and suits that it argues do not meet the definition of "covered claims" under the Statute.[16]

15.     On December 30, 2002, Manor Care filed this declaratory judgment

---

[10]     Complaint ¶ 2; Answer ¶ 2; Stipulation attached as Exhibit A to PCIGC's Renewed Motion of Summary Judgment, filed August 27, 2003.

[11]     Complaint ¶ 16; Answer ¶ 16.

[12]     Complaint ¶ 18; Answer ¶ 18.

[13]     Md. Code Ann. § 9-306(c).

[14]     See Plaintiff's Motion to Compel and for Sanctions, Exhibit 1, Deborah Price Depo. 16, 22. Attached hereto for the Court's convenience as Exhibit A.

[15]     See Plaintiff's Motion to Compel and for Sanctions, Exhibit 1, Deborah Price Depo., 22. Attached hereto for the Court's convenience as Exhibit A.

[16]     Complaint ¶ 23, 25; Answer ¶¶ 23, 25.

5

and breach of contract action against PCIGC.[17]

## III.    Standard for Summary Judgment

Summary judgment is proper if the evidence before the court, consisting of the pleadings, depositions, answers to interrogatories, and admissions of record, establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[18]  A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and the moving party is entitled to judgment as a matter of law.[19]

If the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to summary judgment as a matter of law, the non-moving party must, in order to withstand the motion for summary judgment, produce sufficient evidence in the form of depositions, affidavits or other documentation which demonstrates that a triable issue of fact exists for trial.[20]  The non-moving party is entitled to have all reasonable inferences…drawn in its respective favor.[21]

## IV.    The Issue to be Decided on Summary Judgment

The issue before this court on cross motions for summary judgment is whether the statutory language contained in Maryland's Property and Casualty Insurance

---

[17]      Complaint and Jury Demand, Civil Action L02CV4206, filed December 30, 2003.

[18]      Fed. R. Civ. P. 56(c).

[19]      *May v. Roadway Express, Inc.*, 221 F. Supp.2d 623, 626 (2002), citing, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed.2d 265, 106 S. Ct. 2548 (1986).

[20]      *Harleysville Ins. Co. v. Mac's Septic Service*, 225 F. Supp.2d 595, 597 (2002), citing, *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 91 L. Ed.2d 265, 106 S. Ct. 2548 (1986).

[21]      *Harleysville Ins. Co. v. Mac's Septic Service*, 225 F. Supp.2d 595, 597 (2002), citing, *Felty v. Graes-Humphreys Co.*, 818 F.2d 1126, 1129 (4th Cir. 1987).

Guaranty Act, Md. Code Ann. § 9-301, *et seq.*, means that PCIGC is obligated to Manor Care for "covered claims" brought against Manor Care as a policyholder of PHICO, an insolvent insurer.

## V.    Argument - -  Manor Care's Claims Are "Covered Claims" Under the Statute

PCIGC asserts that the plain and unambiguous meaning of the words used in the Statute's definition of "resident" confers no protection to Manor Care. PCIGC's analysis is oversimplified, ignores other possible meanings, and fails to follow general rules of statutory construction.

### A.    "Is" Can Mean <u>Either</u> Present or Past

PCIGC argues that the plain meaning of the Statute's definition of "resident"—"a corporation or entity whose principal place of business is in the State" -- is that Manor Care must <u>presently</u> be a resident to have a covered claim. PCIGC's analysis of the Statute begins and ends with the meaning of "is". The language at issue here, however, is not free from ambiguity. Contrary to PCIGC's assertion, the word "is" can mean the past or the present. Black's Law Dictionary states that "is" may have a past significance, as in the sense of "has been."

> "Is." This word, although normally referring to the present, often has a future meaning, but is not synonymous with "shall have been." It may, however, have a past signification, as in the sense of "has been."[22]

Clearly, this Court can properly read the word "is" as "has been," so that the definition of "resident" is a corporation or entity whose principal place of business *has been* in the state. This reading would also be consistent with other sections of the Statute.

---

[22]    *See* Black's Law Dictionary, 577 (6th ed. 1991) (definition of "is").

**B. The Statute Does Not Say "Presently" and Other Provisions Conflict
with a Present Tense Interpretation.**

In determining legislative intent, a court must read the language of the Statute

in context and in relation to all of its provisions and its purpose.[23]

Although PIGC bases its entire argument on the Statute's definition of

"resident," other sections of the Statute are instructive on the meaning of "covered

claim" and "resident."   For example, the Statute provides in pertinent part as follows:

**§ 9-302. Purposes.**[24]

The purposes of this subtitle are:

> (1)   To provide a mechanism for the prompt payment of
> covered claims under certain policies and to avoid
> financial loss to residents of the state who are claimants
> or policyholders of an insolvent insurer; and

**§ 9-301. Definitions.**[25]

In this subtitle the following words have the meanings indicated.
>      . . . .

> (c)   Corporation.
>
>       "Corporation" means the Property and Casualty Insurance
>       Guaranty Corporation.
>
> (d)   Covered claim.
>
>       (1)   **"Covered claim" means an insolvent insurer's
>             unpaid obligation**, including an unearned premium:
>
>             (i)   **that:**

---

[23]   *Howard Research & Dev. Corp. v. Concerned Citizens for Columbia Concept*, 297 Md. 357,
364 (1983).

[24]   Md. Code. Ann. § 9-302.

[25]   Md. Code Ann. § 9-301 (**emphasis supplied**).

1. A.  for insurance other than insurance that covers members of a purchasing group, **arises out of a policy of the insolvent insurer <u>issued to a resident</u>** or payable to a resident on behalf of an insured of the insolvent insurer;...."

. . . .

(e) Insolvent insurer - "Insolvent insurer" means an insurer:

    (1)    that is authorized to transact insurance business or authorized to issue surety bonds in the staff either when the policy or surety bond is issued or when the event
giving rise to the claim occurs.

    (2)    against whom a court of competent jurisdiction in the insurer's state of domicile has passed a final order of liquidation with a finding of insolvency.

. . . .

(h)    Resident – "Resident" means:

    (2)    A corporation or entity whose principal place of business is in the State.

. . . .

## § 9-306. Powers and Duties of Corporation.[26]

(a)    Obligations as to covered claims – in general.

    (1) Except as to surety bonds, the Corporation shall **be obligated to the extent of the covered claims existing <u>on or before</u> the determination of insolvency** . . .

    (4)    The corporation is not obligated to a policyholder or claimant in an amount in excess of the obligation of the insolvent insurer under **the policy out of which the claim arises.**

. . . .

---

[26]    Md. Code Am. § 9-306 (**emphasis supplied**).

(c) Corporation deemed insurer.

> The Corporation shall be deemed the insurer to the extent of the Corporation's obligation on the covered claims and, to that extent, shall have the rights, duties, and obligations that the insolvent insurer would have had if the insurer had not become insolvent.
> . . .

PCIGC asserts that *because* the Statute's definition of "resident" includes the word "is," a corporation's principal place of business must presently be in Maryland to have a "covered claim." Yet, the word "presently" can be found nowhere in the Statute. This Court should not add words that the Maryland Legislature has never included in the Statute.

PCIGC's arguments also ignore other key language in the Statute. The definition of "resident" must be construed in light of the definition of "covered claim." A "covered claim" is one that arises out of a policy issued to a resident.[27]

The PHICO policies under which Manor Care has asserted its claims are policies issued to a resident of Maryland. When PHICO issued these policies to Manor Care, Manor Care had its principal place of business in Maryland. Therefore, in light of this particular provision of the Statute, it is reasonable and proper to construe the definition of "resident" to mean a resident at the time the policies were in effect.

In addition, Section 9-306(a)(1) of the Statute provides that PCIGC "shall be obligated to the extent of the covered claims existing on or before the determination

---

[27]     Section 9-301(d) defines the term "covered claim" as "an insolvent insurer's is unpaid obligation...that...arises out of a policy... issued to a resident..."

10

of insolvency...." This language suggests that covered claims cannot arise after insolvency, i.e., they cannot arise currently or presently. Manor Care's claims existed before PHICO was deemed insolvent. They arise from the period when the policyholder (Manor Care) is a resident.

Also, Section 9-306(a)(4) of the Statute refers to PCIGC's obligation to the policyholder in the context of "the policy out of which the claim arises." This statutory language again places emphasis on the time period of the policies, not the present. These other provisions conflict with a present tense interpretation of the resident definition section. This Court should read all of the sections together for a common sense interpretation of the statutory language.

### C. The Rules of Statutory Construction Require the Court to Consider the Purpose of the Statute.

"The cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature."[28] "While the language of the Statute is the primary source for determining legislative intention, the plain meaning rule of construction is not absolute; rather, the Statute must be construed reasonably with reference to the purpose, aim, or policy of the enacting body. The Court will look at the larger context, including the legislative purpose, within which statutory language appears. Construction of a Statute which is unreasonable, illogical, unjust, or inconsistent with common sense should be avoided."[29]

PCIGC asserts that the goal or purpose of the Statute is only to benefit

---

[28]   *Oaks v. Connors*, 339 Md. 24, 35 (1995).

[29]   *Tracy v. Tracy*, 328 Md. 380, 387 (1992).

claimants who are <u>presently</u> Maryland residents or policyholders.[30]  Actually, the

Statute's purpose is quite broad: "To provide a mechanism for the prompt payment of

covered claims under certain policies and to avoid financial loss to residents of the

state who are claimants or, policyholders of an insolvent insurer...."[31]  "Under the

statutory scheme, PCIGC supplants the insolvent insurer to fulfill the obligations that

the insolvent insurer should have fulfilled, thus stands in the shoes of the insolvent

insurer, and, subject to applicable policy limits and conditions, is liable for covered

claims that could have been brought against the insurer."[32]

Consistent with the purpose of the Statute, Manor Care is entitled to be

indemnified and defended by PCIGC.  Manor Care contributed to the Maryland

Guaranty Fund for protection in the event that its insurer, PHICO, became insolvent.

On February 1, 2002, the Commonwealth Court of Pennsylvania found PHICO

insolvent and ordered PHICO into liquidation.  Manor Care has covered claims that

could have been brought against PHICO.  Even though Manor Care contributed to the

Maryland Guaranty Fund at the time the injury giving rise to the applicable claims

arose, PCIGC now denies Manor Care the specific protection the Statute intended to

provide.

PCIGC cites *Joe Shifflett, Inc.*[33] to support its assertion that 9-301, *et seq.* is

---

[30]    PCIGC's Renewed Motion for Summary Judgment with Memorandum in Support filed August 27, 2003 ["PCIGC's Motion"], ¶. 7-8.

[31]    Md. Code Ann. § 9-302.  *See also Joe Shifflet, Inc. v. PCIGC*, 77 Md.App.706, 709, 551 A.2d 913 (1989) ("PCIGC was created by the Maryland Legislature as a remedy for the particular societal malady caused by defunct insurance carriers.").

[32]    *Joe Shifflet, Inc.*, at 710.

[33]    *Joe Shifflett, Inc. v. Property & Cas. Ins. Guaranty Corp.,* 77 Md. App. 706, 551 A.2d 913 (1989).

only intended to benefit <u>current</u> Maryland residents.[34]  The case concerned the interpretation of a different section of the Statute than the one at issue here.

The issue in *Joe Shifflett, Inc.* was whether Joe Shifflett, Inc., claimant and non-resident, had a covered claim under § 505(c) of art. 48A (c)(1)(i)2 (now § 9-301(d)(i)2).  PCIGC argued that Joe Shifflett, Inc. did not have a covered claim, because it was not a Maryland resident.  The court disagreed and looked at the residence of the obligee on the surety bond, rather than Joe Shifflett, Inc.'s residence in determining whether Joe Shifflett, Inc. had a covered claim.  The court held that Joe Shifflett, Inc. could recover because the claim arose "out of surety bonds issued by an insolvent insurer for the protection of third parties, who are residents of this State."[35]  The court was concerned that the obligee, Eastern Indemnity, would not be protected from non-resident claims.  The court stated "We reject PCIGC's construction of the statute because we believe the act was designed to benefit claimants and policyholders who are Maryland residents."[36]  Because the obligee on the bond was a resident of Maryland, and the surety bond was issued for the protection of the obligee, Joe Shifflett had a covered claim under the Statute.

Next, in support of its contention that Manor Care does not have a covered claim under the Statute, PCIGC compares the definitions of "covered claim" and

---

[34]    In PCIGC's Motion, p. 7, PCIGC quotes from *Joe Shifflett, Inc.,* stating that "the statute makes transpicuous that its goal is to benefit claimants who are Maryland residents or policyholders." In its failure to provide any context for the court's statement, PCIGC implies that the court said that the statute was <u>only</u> intended to benefit claimants or policyholders who are Maryland residents.  In contrast to PCIGC's implication, the court made that statement to explain why it did not want to limit covered claims to resident claimants.  In other words, the court stated that it also wanted to protect the obligee from non-resident claimants.  This case, therefore, should have no impact on whether Manor Care has a covered claim under the statute.

[35] *Id.* at 710.

[36] *Joe Shifflett, Inc.,* 77 Md. App. at 711.

"resident" in the National Association of Insurance Commissioners Model Laws
(Model Act) to the definitions of "covered claim" and "resident" in the Maryland
Statute. PCIGC argues that the Maryland Legislature adopted a narrower definition
of "covered claim" and "resident", thereby intending only to protect corporations that
are <u>presently</u> Maryland residents.

Contrary to PCIGC's assertion, the Maryland Statute is intended to provide
broader coverage than the Model Act. The Model Act defines a "covered claim" as
an unpaid claim, which arises out of and is within the coverage and is subject to the
applicable limits of an insurance policy to which this Act applies issued by an insurer,
if the insurer becomes an insolvent insurer after the effective date of this Act and the
insured is a resident of this state at the time of the insured event.[37]   The residence of
a corporation is defined as the state in which the corporation's principal place of
business is located at the time of the insured event.[38]   Section 9-301(d) of the
Maryland Statute, on the other hand, defines "covered claim" as an insolvent insurer's
unpaid obligation that arises out of a policy of the insolvent insurer issued to a
resident.[39]  "Resident" is defined as a corporation or entity whose principal place of
business is in the State.[40]

While the Model Act contains a temporal element, limiting coverage to
insureds that are residents of Maryland at the time of the insured event, the Maryland
Statute contains no such temporal limitation. PCIGC attempts to infer a temporal

---

[37]    See Model Act § 5.F(1).

[38]    *Id.*

[39]    See 9-301(d)(1)(i).

[40]    See § 9-301(h)(2).

element in the Maryland Statute by defining resident as a corporation whose principal

place of business is <u>presently</u> in the State. But, the Statute does not say "presently",

and "is" can mean past or present.[41]    The Maryland Statute, therefore, can be

interpreted to provide coverage for insureds that were residents of Maryland at the

time of the insured event and after the time of the insured event.  Under the Model

Act, however, an insured that became a resident after the time of the insured event is

not covered.  Thus, the Maryland Statute does not attempt to limit coverage, as

PCIGC claims, but actually intends to provide broad coverage.

### D.    Legislative History Does Not Support PCIGC's Statutory Interpretation.

The legislative history of 9-301, *et seq.* reveals no intent by the Maryland

Legislature to exclude claims presented to PCIGC by insureds that are not <u>presently</u>

Maryland residents.

In 1986, the Maryland Legislature amended the definitions of "covered claim"

and "resident."  The definition of "covered claim" remained the same from 1971,

when the Maryland Insurance Guaranty Association Act (now The Property and

Casualty Insurance Guaranty Corporation Act) was enacted, until 1986.  Article 48A,

section 505 of the earlier Maryland Insurance Guaranty Association Act stated that:

> Covered claim means an unpaid claim...which arises out of and is within the coverage of an insurer...if such insurer becomes an insolvent insurer...and the claimant is a resident of this State <u>at the time of the insured event</u>.

Under this definition of "covered claim", Manor Care would have a covered claim,

because it has an unpaid claim that is within PHICO's coverage and Manor Care was

---

[41]    See Black's Law Dictionary, 577 (6th ed. 1991) (definition of "is.").

a resident of Maryland at the time of the insured event.

The 1986 definition of "covered claim" is the definition found in the current version of 9-301, *et seq.* PCIGC claims that the 1986 language of 9-301, *et seq.* is intended to exclude Manor Care, who is not <u>presently</u> a resident of Maryland. This interpretation of the Statute is not mentioned anywhere in the legislative history of the 1986 amendments. In fact, when the Maryland Legislature changed the language of the definition of "covered claim" in 1986, it did not include any explanation for its change.

It is difficult to believe that the Maryland Legislature would make the change PCIGC claims, now excluding a whole class of insureds from protection against insolvent insurers, without clearly stating that it intended to exclude insureds who were not <u>presently</u> Maryland residents. The absence of any explanation for the 1986 amendment to the definition of "covered claim" further supports Manor Care's assertion that it has a covered claim under 9-301, *et seq.*, even though it is no longer a Maryland resident.

PCIGC's interpretation produces a result that the Maryland legislature never intended. First, because most other state guaranty fund statutes require that insureds be residents of the state at the time of the insured event,[42] every policyholder of an

---

[42]   *See, e.g.,* **N.J. Stat. Ann. § 17:30A-5.d(1)(2003)**(claimant or insured is a resident of this State at the time of the insured event); **N.M. Stat. Ann. § 59A-43-4.C (1) (2003)** (the liability claimant or insured is a resident of this state at the time of the insured event); **Okla. Stat. 36§ 2004. 6(a)(2002)**(for entities other than an individual, the residence of a claimant or insured is the state in which its principal place of business is located at the time of the insured event); **40 Pa.Cons.Stat.§ 991.1802(1)(i)(2003)**(for entities other than an individual, the residence of a claimant or insured is the state in which its principal place of business is located at the time of the insured event); **Tex. Insurance Code Ann. § 21.28-C. Sec. 5 (8)(2003)**(the third party claimant or liability claimant or insured is a resident of this state at the time of the insured event); **Va.Code Ann. § 38.2-1603(2003)** (the residence of a claimant or insured is the state in which its principal place of business is located at the time of the insured loss); **Del.Code Ann. 18 § 4205(6)a.1.(2003)**(the state of residence of a claimant or insured shall be the state in which that entity has a principal place of business most closely

insolvent insurer who moves out of Maryland after the insured event occurred will be without recourse and forced to absorb the loss the insolvent insurer created. Certainly the Maryland legislature that originally created the guaranty fund, and those who passed amendments did not intend this result.

Second, PCIGC's interpretation suggests that Manor Care could simply relocate its principal place of business to Maryland and have "covered claims" under the Statute.

As a resident of Maryland, Manor Care purchased property and casualty insurance from PHICO. It paid PHICO premiums to maintain this insurance. As a condition of being authorized to transact the business of insurance in Maryland, PHICO was required to be a member of PCIGC and pay PCIGC's premiums and assessments. Part of the premiums paid by Manor Care, therefore, sustained PCIGC's operations. One of the reasons Manor Care purchased insurance from PHICO was the protection it thought the Maryland guaranty fund provided to PHICO's policyholders. PCIGC cannot now deprive Manor Care of that protection simply because Manor Care subsequently relocated its principal place of business to Ohio.

---

related to the claim); **Fla. Stat. ch. 631.54 (3) (2003)** (the claimant or insured is a resident of this state at the time of the insured event); **Ga. Code Ann. § 33-36-3(2)(B)(iii) (2003)** (the claim of a policyholder or insured who at the time of the insured event was a resident of this state); **215 Ill. Comp.Stat.5/534.3(a)(ii)(2003)** (for entities other than an individual, the residence of a claimant, insured, or policyholder is the state in which its principal place of business is located at the time of the insured event); **Kan.Stat.Ann. § 40-2903(c)(1) (2002)** (the claimant or insured is a resident of this state at the time of the insured event); **Ohio Rev.Code Ann. §3955.01(D)(1)(a)(2003)** (for the purpose of determining the place of residence of a claimant or insured that is an entity other than a natural person, the state in which the principal place of business is located at the time of the insured event shall be considered the residence of such claimant or insured).

E.    **The Two Cases PCIGC Relies on are not Controlling Because They Interpret The Word "Requires" in the Juvenile Causes Act and the Phrase "is adapted" in a Criminal Law Prohibiting Slot Machines.**

PCIGC cites two cases to support its contention that Manor Care must presently be a resident to have a covered claim. One case interprets the word "requires" in the Juvenile Causes Act and the other case interprets the phrase "is adapted" in a Criminal law prohibiting slot machines. Both cases are readily distinguishable, have no bearing on whether Manor Care's claims are covered claims under the Statute, and should not be relied upon by this Court to explain the statutory language at issue.

1.    *In re Charles K* **and** *Allen v. State* **are distinguishable from this case**

PCIGC cites *In re Charles K*[43] and *Allen v. State*[44] to support its contention that Manor Care must presently be a resident of Maryland to have a "covered claim" under the Statute. PCIGC's reliance on these cases to bolster its contention that Manor Care does not have a "covered claim" is misplaced.

The issue in *In re Charles K* was whether the defendant juvenile was a "delinquent child" under the Juvenile Causes Act.[45] The Act defined a "delinquent child" as "a child who has committed a delinquent act and requires guidance, treatment or rehabilitation."[46] The court's analysis centered on the interpretation of "requires." The court ruled that the child was not a delinquent child under the Act,

---

[43]    *In re Charles K*, 135 Md. App.84, 761 A.2d 978 (2000).

[44]    *Allen v. State*, 18 Md.App. 459, 307 A.2d 493 (1973).

[45]    *See In re Charles K*, 135 Md. App. at 91.

[46]    *Id.*

because while the child *had committed* a delinquent act, the child did not presently *require* guidance, treatment or rehabilitation.[47]

PCIGC's discussion of *In re Charles K* is misleading. PCIGC fails to recognize that the *In re Charles K* court determined legislative intent not only from the plain meaning of the statutory language, but also from the purpose or goal of the Act.[48] In fact, the purpose of the Juvenile Causes Act drives the court's ultimate conclusion that the legislature intended "requires" to be interpreted in the present tense: "In reaching these conclusions, we are mindful of the broad social purposes that undergird the Juvenile Causes Act and the special role of the juvenile court in seeking to protect and rehabilitate children."[49] The court also discussed the significance of interpreting the Act as a whole. "In addition, the statute must be considered as a whole; all sections of the Act must be read together, in conjunction with one another, to discern the true intent of the legislature."[50]

Given the importance of the particular facts of the case and the purpose of the Juvenile Causes Act in the court's analysis, both of which bear no resemblance to the facts or Statute at issue here, *In re Charles K* provides little guidance on whether Manor Care has a covered claim under the Statute.

Similarly, PCIGC's reliance on *Allen v. State*[51] is confusing. PCIGC fails to include portions of the court's analysis that are critical to an understanding of the

---

[47]   *Id.* at 98.

[48]   *Id.*

[49]   *Id.*

[50]   *Id.* at 97.

[51]   *Allen,* 18 Md. App. at 461

court's conclusions. The issue in *Allen v. State* was whether the legislature intended the phrase "is adapted" in the statute's definition of slot machine -- "a device that is adapted for use" -- to mean a machine that has already been adapted or a machine that is adaptable.[52] The court concluded that "is adapted" means that the machine must already have been adapted to constitute a slot machine.[53] Since the defendant's machine was adaptable, but had not yet been adapted for use, the court concluded that the defendant did not violate the Statute.[54]

Significantly, the court in *Allen v. State* used the <u>past significance</u> sense of "is" to conclude that "is adapted" meant "already have been adapted." This Court should use the same past significance of "is" to conclude that Manor Care must *already have been* a resident of Maryland to have a "covered claim."

Also, while accurately summarizing the *Allen* court's conclusions, PCIGC fails to include significant portions of the court's analysis. In reaching its conclusions, the *Allen* court was clearly concerned because the statute at issue was a criminal statute, and it involved an exercise of state police power. "It may be that the police power of the state is practically unrestrained. Nevertheless, if the Legislature means to exercise the power to its fullest dimensions it should use language which makes that intention manifest."[55] The *Allen* court was also careful about limiting its analysis of the statute to the particular facts of the case. "In concluding that the outer limits of liberal construction have been exceeded and that the conviction of the

---

[52]    *Id.*

[53]    *Id.* at 465.

[54]    *Id.*

[55]    *Allen*, 18 Md. App. at 471.

appellant therefore must be reversed, we confine ourselves strictly to the facts of this case."[56] Because of the *Allen* court's obvious desire to restrain the state's police power, and the dissimilarity between the facts of *Allen* and the facts here, the *Allen* court's conclusion is not particularly helpful on the issue of whether Manor Care has a covered claim under the Statute.

## VI.    Conclusion

PCIGC is not entitled to judgment as a matter of law.  In failing to properly address or apply Maryland rules of statutory construction, PCIGC asserts a flawed interpretation of the Statute.  Contrary to PCIGC's assertions, the Statute does not plainly limit coverage to corporations that are <u>presently</u> Maryland residents.  Even though Manor Care is no longer a resident of Maryland, it was a resident at the time PHICO issued policies to Manor Care and at the time the insured events giving rise to the covered claims occurred.  Based on the purpose of the Statute and the meaning of the Statute as a whole, the Maryland legislature clearly intended to extend coverage to entities like Manor Care who have been residents of Maryland and have financial losses as a policy holder of an insolvent insurer.

Accordingly, Manor Care requests that this Court grant it Summary Judgment on the issue of whether Manor Care's claims are "covered claims" under Md. Code Ann. § 9-301, *et seq.*

---

[56]    *Id.* at 470.

_____/s_____

James H. Hulme (Bar No. 00875)
Deanne M. Ottaviano (Bar No. 15659)
ARENT FOX KINTNER PLOTKIN &
    KAHN, PLLC
1050 Connecticut Avenue, NW
Washington D.C. 20036-5339
Telephone: (202) 857 6000
Facsimile:   (202) 857-6395

and

Gerald R. Kowalski
Jodi D. Spencer
COOPER & WALINSKI, LPA
900 Adams Street
Toledo, Ohio 43624
Telephone: (419) 241-1200
Facsimile:   (419) 242-9606

*Counsel for Manor Care of America, Inc.*

### Certificate of Service

I hereby certify that on this  18th day of September, 2003, I caused the

foregoing Manor Care of America, Inc.'s Cross Motion for Summary Judgment and

Memorandum Opposing Defendant's Renewed Motion for Summary Judgment and

Supporting Plaintiff's Cross Motion for Summary Judgment to be served

electronically and/or by regular U.S. mail upon the following:

Edward M. Buxbaum, Esq.
Albert J. Mezzanotte, Jr., Esq.
Whiteford Taylor & Preston
Seven Saint Paul St. Ste 1400
Baltimore, Maryland 21202

_____/s_____
Deanne M. Ottaviano

## Deborah Price

Page 16

1          Q     And are those reports prepared on a

2    monthly, quarterly, or some other basis?

3          A     Quarterly.

4          Q     Assuming that the Guaranty Corporation

5    pays a PHICO claim on a medical malpractice

6    policy, from what account are those funds taken

7    from or credited to?

8                MR. MEZZANOTTE:  Object to the form.

9    BY MR. KOWALSKI:

10         Q     Go ahead.

11         A     Medical malpractice claims.

12         Q     Right.

13         A     All other.

14         Q     Where does the Guaranty Corporation get

15    the money to fund the all other account that

16    that's used to pay medical malpractice claims?

17         A     Assessment.

18         Q     Are assessments made on an annual basis

19    by the Guaranty Corporation?

20         A     On an as-needed basis.

21         Q     Does the Guaranty Corporation's year

**Deborah Price**

Page 22

```
1        Q    Has the Guaranty Corporation received
2   any money from the PHICO liquidator?
3        A    (Pause.)  I don't remember off the top
4   of my head if we received any from them.
5        Q    By an assessment, you mean an
6   assessment made to an insurance company
7   authorized to do business in the state of
8   Maryland?
9        A    I'm sorry.  Can you repeat that.
10       Q    By an assessment, you mean an
11  assessment or a charge to an insurance company
12  that is authorized to do business in the state of
13  Maryland?
14       A    Yes.
15       Q    Do you know if the Guaranty
16  Corporation is a member of the National
17  Conference of Insurance Guaranty Funds?
18       A    Yes.
19       Q    Have you ever attended a meeting of the
20  National Conference of Insurance Guaranty Funds?
21       A    Yes.
```