IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MANOR CARE OF AMERICA, INC. )<br>)<br>    Plaintiff )<br>)<br>v. )<br>)<br>PROPERTY & CASUALTY INSURANCE )<br>GUARANTY CORPORATION )<br>)<br>    Defendant )<br>) | Civil Court Action No: L02CV4206 |

**DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

Defendant, Property & Casualty Insurance Guaranty Corporation, by its undersigned counsel, hereby submits this brief both in further support of its Motion for Summary Judgment and in opposition to Plaintiff's Motion for Summary Judgment.

**I.     INTRODUCTION**

Plaintiff Manor Care of America (hereinafter "Plaintiff" or "Manor Care") is a Delaware corporation with its principal place of business in Ohio. Plaintiff purchased medical malpractice insurance from PHICO Insurance Company ("PHICO") during the period of 1993-1997. In February of 2002, PHICO was declared insolvent and ordered into liquidation. Plaintiff now seeks to obtain coverage under its PHICO policies by presenting certain malpractice claims to PCIGC. PCIGC's limited resources, however, are designated by the Maryland legislature to be used solely for the benefit of Maryland residents. In an effort to circumvent this legislative restriction, Plaintiff contends that as

an Ohio resident, it is nonetheless is entitled to coverage from PCIGC because, at an earlier time, Plaintiff was a Maryland resident.

As Plaintiff concedes, this case necessarily turns on the statutory construction of the term "resident" as defined in section 9-301(h) of the Insurance Article of the Maryland Code. In that regard, the clear language set forth in § 9-301(h) does not support Plaintiff's position. Accordingly Plaintiff has resorted to arguments that ignore the cardinal rules of statutory construction, and further, to nonsensical arguments concerning the meaning of the word "is". According to the Plaintiff, notwithstanding basic rules of grammar, "is" means "was, but is not currently." Not surprisingly, Plaintiff is unable to cite to any significant authority that would support its "interpretation" of the word "is." Rather, Plaintiff's sole "authority" for its position is derived from Black's Law Dictionary. Suffice it to say that Plaintiff's attempt to rewrite and expand the applicable Maryland statute, based upon a legal dictionary, is untenable.

Moreover, because of the inherent weaknesses in its argument – that "is" means "was, but is not presently" – Plaintiff has coupled its argument with a desperate appeal to this Court's sympathy. Specifically, the Plaintiff urges that PCIGC be forced to provide it benefits because Plaintiff has no other source of guaranty fund recovery. Plaintiff's attempt to resort to notions of equity in its effort to find coverage cannot and should not justify expanding the plain statutory language of the Maryland Insurance Code.

II.   ARGUMENT

    **A. The Relevant Statute Plainly Limits PCIGC's Responsibility To Pay An Insolvent Insurer's Obligation To Current Maryland Residents.**

Maryland law is clear that the role of the court in interpreting a statute is "to determine the intention of the Legislature in enacting it." Dyer v. Otis Warren Real Estate Co., 371 Md. 576, 580-81, 810 A.2d 938, 941 (2002). To that end, "when the words of the statute are clear and unambiguous, <u>according to their commonly understood meaning</u>," the court need go no further in its inquiry. Id. (quoting Mayor & City Council of Baltimore v. Chase, 360 Md. 121, 128, 756 A.2d 987, 991 (2000), in turn quoting Chesapeake and Potomac Telephone Co. v. Director of Finance, 343 Md. 567, 578-79, 683 A.2d 512, 517-18 (1996)) (emphasis added). To carry out this task, Maryland law provides that a court may not construe statutes with "forced or subtle interpretations" that expand the statute's application but rather, must construe legislative language pursuant to its normal and ordinary signification. Id. (quoting Mayor & City Council of Baltimore v. Chase, 360 Md. 121, 128, 756 A.2d 987, 991 (2000), in turn quoting Chesapeake and Potomac Telephone Co. v. Director of Finance, 343 Md. 567, 578-79, 683 A.2d 512, 517-18 (1996)). Here, application of these cardinal rules of statutory construction compels the conclusion that a corporation must be a resident of Maryland at the time the claim is presented in order to satisfy the requirements set forth in § 9-301.

        **1.   The Legislature's Definition Of "Resident" Is Unambiguous.**

The central dispute in this case involves the meaning of one of the most common words in the English language, the word "is", the present tense of the verb "to be."

Pursuant to sections 9-301 *et seq.* of the Insurance Article of the Maryland Code,[1] PCIGC's coverage responsibility is triggered only if a "covered claim" is presented by a defendant or claimant who **is** a Maryland "resident." The Maryland legislature defined the term "resident" to mean, with regard to corporations, "[a] corporation or entity whose principal place of business is in the State." Md. Code Ann., Ins. § 9-301 (h) (1997) (emphasis added). Although Plaintiff attempts to import ambiguity into the term "is" by arguing that the word possibly could mean "has been," Plaintiff's attempt conflicts with long-standing and cardinal principles of statutory interpretation, and is unsupported by legal authority.

As previously stated, the well-settled rules of statutory interpretation dictate that the words used by the legislature must be given their normal and ordinary signification, not strained or forced interpretations. Dyer, 371 Md. at 580-81, 810 A.2d at 941. As the very definition cited by the Plaintiff states, the word "is" "normally" refers to the present. Black's Law Dictionary 577 (abridged 6th ed. 1991). Moreover, cases interpreting the word "is" in various statutes have made clear that the word "is", means "the present tense, not the perfect 'has been.'" State v. Boner, 49 S.E. 944 (W. Va. 1905); see also In re Melissa H, 113 Cal. Rptr. 139 (Cal. Ct. App. 1974) (use of the word "is" indicates the present tense, not the past tense); Kasarsky v. New York Life Ins. Co., 260 N.Y.S. 769 (City Ct. N.Y. 1932) ("is," as used in an insurance contract, "constitutes the

---

[1]   Sections 9-301 *et seq.* of the Insurance article of the Maryland Code are hereinafter collectively referred to as the "Guaranty Fund Statute."

4

third person singular of the present indicative of the verb 'be' [and] is employed only in indication of the present tense.") [2]

Here, the plain statutory language employed by the legislature indicates that a corporation must be a resident of Maryland at the time it presents its claim. Had the legislature intended otherwise, it easily could have indicated so by defining a resident as any corporation whose principal place of business is or "has been" in the State.[3] The legislature chose not to do so and, accordingly, this Court must give the term "resident" the unambiguous meaning ascribed to it by the legislature.

### 2. The Plain Definition Of "Resident" Is In Harmony With The Purpose, Legislative History and Provisions Of The Guaranty Fund Statutes

Contrary to Plaintiff's arguments, the requirement that a corporation be a resident of the State at the time it presents its claims is in accord with the purpose of the statute, its legislative history, and the other provisions of the statute.

#### a. The purpose of the statute is to protect current residents of Maryland.

As the Plaintiff recognizes, the stated purpose of the statute is to "avoid financial loss to <u>residents</u> of the State who <u>are</u> claimants or policyholders of an insolvent insurer[.]" Md. Code Ann., Ins. § 9-302. The legislature's use of the present tense here reinforces that it intended to protect only current residents of Maryland. Plaintiff was

---

[2]   Plaintiff argues that the failure of the legislature to use the phraseology "is <u>presently</u> in the State" is significant. As the word "is" indicates the present tense on its own, it would be redundant and unnecessary for the legislature to use the phrase "is presently."

[3]   Moreover, as discussed in the Defendant's Motion for Summary Judgment, the legislature could have adopted the broad residency definition provided in the Model Act. The decision not to adopt that broader definition of residency cannot be without significance.

not a resident of Maryland both at the time of the PHICO insolvency[4] and Plaintiff's subsequent presentation of the claims at issue to the Defendant. Moreover, as Plaintiff concedes, none of the claimants in the underlying malpractice matters are residents of Maryland. Accordingly, as neither the Plaintiff nor the underlying medical malpractice claimants are residents of Maryland, the claims presented by Plaintiff do not fall within the stated purpose and scope of the statute.[5]

> **b. The legislative history confirms that a corporation must be a resident of Maryland at the time it presents its claims.**

The plain construction of the term "resident" is further supported by the legislative history that resulted in the statutory definition of that term. The legislature first added the definition of "resident" by Chapter 440 of the Acts of 1986, which was derived from House Bill 323. During that session, the Maryland General Assembly was faced with the insolvency of EICOM, with losses estimated between $11 and $15 million. Ward Elect. Servs, Inc. v. PCIGC, 325 Md. 1, 10, 599 A.2d 81, 85 (1991). The legislature responded to these fiscal concerns in several ways. First, the legislature disassociated PCIGC from the State and made clear that the liabilities of PCIGC were

---

[4] In an apparent effort to manufacture residency, Plaintiff asserts that there is no factual dispute that part of the premiums it paid to PHICO during the period of 1993-1997 "sustained" PCIGC's operations. (Plaintiff's Cross Motion for Summary Judgment at 17). This "fact" is very much in dispute. Indeed, PCIGC did not make any assessments that would cover the type of insurance at issue here during the period in which the Plaintiff was a Maryland resident insured by PHICO. See, PCIGC Assessment Statements covering the period 1993-1997 collectively attached hereto as **Exhibit A**. Accordingly, there is no evidence in this record that any part of the premium that the Plaintiff paid to PHICO for its professional liability insurance went to PCIGC.

[5] Although Plaintiff also cites section 9-302 of the Insurance article in support of its argument that other provisions of the statutory scheme conflict with a present tense interpretation of "is," Plaintiff offers no explanation, beyond a quotation of the statutory language, of how this section supports its argument. As demonstrated, this section clearly does not support Plaintiff's argument.

6

not liabilities of the State.  See Chapter 161 of the Acts of 1986.  Second, the legislature acted to place limits on the liability of PCIGC by placing a cap on the amount of a covered claim.  See Chapter 440 of the Acts of 1986 at 1618, 1622.  As the Court of Appeals has noted, "[c]learly, the General Assembly was not in a fiscally expansive mood when it enacted Chapters 440 and 161."[6]  Ward Elect. Servs, Inc., 325 Md. at 12, 599 A.2d at 86.  Accordingly, "[t]ying tightly to Maryland the definition of 'resident,' as an element of a covered claim satisfies that legislative purpose." Id.

Moreover, Plaintiff is flat out wrong in its argument that the legislative history supports its position that a corporation need not be a resident of Maryland at the time it presents its claim.  In making this argument, Plaintiff asserts that, until 1986, the Guaranty Fund Statute expressly provided that claimants and policyholders had a covered claim if they were residents "at the time of the insured event." (Plaintiff's Cross Motion for Summary Judgment at 15.)  Plaintiff further argues that because there is no discussion of this change "anywhere in the legislative history of the 1986 amendments" this Court should not give effect to that clear change in language.

Plaintiff is wrong on both the facts and the law.  First, contrary to the Plaintiff's assertions, the only changes that the legislature made to the definition of "covered claim" in 1986 were those changes necessary to provide coverage for claims arising under surety bonds.  Compare, Md. Ann. Code art. 48A, § 505(c) (1985 Supp.), with,

---

[6]  The Preamble to Chapter 440 similarly states: "A recent insolvency of a surety insurer has proven to the Maryland General Assembly that the law covering the Maryland Insurance Guaranty Association must be changed so that covered claims caused by this recent insolvency can be paid off promptly[.]" Chapter 440 of the Acts of 1986 at 1619.  The legislature also made clear that they were concerned with "the general welfare of the people of Maryland in the vital area of insurance . . . ." Id. (emphasis added).

7

Md. Ann. Code art. 48A, § 505(c) (1986 Repl. Vol.).[7]  Neither the 1985 nor the 1986 definition of "covered claim" contains the language that Plaintiff "quotes" to this Court: "the claimant is a resident of this State at the time of the insured event."  Accordingly, it is hardly surprising that the 1986 amendments do not discuss a change in language that was not implemented by those amendments.[8]

Second, the Plaintiff is wrong on the law.  Even if there were no mention of this change in the legislative history of the statute, this Court could not simply read the legislature's intended changes out of the statute.  See Board of Supervisors of Elections v. Weiss, 217 Md. 133, 138-39 141 A.2d 734, 737 (1958) (per curiam) (stating that although the Revisor's notes did not indicate that a change to the voter registration law

---

[7]     A copy of the 1985 version of section 505 (c) is attached hereto as **Exhibit B**.  A copy of the 1986 version of section 505 (c) is attached hereto as **Exhibit C**.

[8]     Prior to the enactment of 1975 amendments to the Guaranty Fund Statutes, the definition of "covered claim" included language *similar* to that quoted by the Plaintiff:

> "Covered claim" means an unpaid claim . . . which arises out of and is within the coverage, and not in excess of the applicable limits of an insurance policy . . . if such insurer becomes an insolvent insurer . . . and (1) the claimant or insured is a resident of this State at the time of the insured event; or (2) the property from which the claim arises is permanently located in this State.

See Acts of 1975, ch. 651 at 2999 (setting forth in brackets the language that would be deleted by the amendments), a copy of which is attached hereto as **Exhibit D**.  The 1975 amendments changed that language by substituting the following definition of covered claim:

> "Covered claims" means obligations, including unearned premiums, of an insolvent insurer which (1) arise out of the insurance policy contracts of the insolvent insurer issued to residents of this state or which are payable to residents of this state on behalf of insureds of the insolvent insurer, (2) were unpaid by the insolvent insurer, (3) are presented as a claim to the receiver in this State or the association on or before the last date fixed for the filing of claims in the domiciliary delinquency proceedings, (4) were incurred or existed prior to, on, or within 30 days after the date the receiver was appointed, and (5) arise out of policy contracts of the insolvent insurer issued for the kinds of insurance to which this subtitle applies. . . .

was substantive, the revision of the law "was no mere casual rearrangement of sections," and it would be "unreasonable" to hold any changes "were inadvertent and not intended"); Abramson v. Montgomery County, Md., 328 Md. 721, 736-38, 616 A.2d 894, 901-02 (1992) (refusing to interpret new statutory term "person" to be identical to former statutory term "party" in tax article). For these reasons, this Court should not give any consideration to Plaintiff's argument that the legislative history supports its position.

### c. The statutory scheme reinforces that the legislature intended that a corporation must be a resident at the time it presents its claim.

Finally, other provisions of the statutory scheme are in accord with the requirement that, in order for a claim to be covered by PCIGC, a corporation must be a resident at the time it presents the claim. As discussed above, employing the plain, commonly understood present tense, meaning of "is" and requiring that a corporation be a resident at the time it presents its claim is in accord with section 9-302, which sets forth the purpose of the statute.

Similarly, requiring a corporation to be a resident at the time it presents its claim is supported by the corresponding definition of a "covered claim" as it relates to surety bonds issued by insolvent insurers. That definition states that a "covered claim" means an insolvent insurer's unpaid obligation that "arises out of a surety bond issued by the insolvent insurer for the protection of a <u>third party that is a resident</u>[.]" Md. Code Ann., Ins. § 9-301 (d)(1)(i)(2) (1997) (emphasis added). Again, the use of the present

---

Id. The act itself states that its purpose was, in part, was to clarify definitions contained in the Guaranty Fund Statutes. Id. at 2997.

tense, "is a resident", reinforces that the legislature intended to protect only current residents.

Likewise, the definition of "covered claim" as it relates to insurance that covers members of a purchasing group also confirms that a corporation must be a resident at the time it presents its claim. Specifically, that definition provides that a "covered claim" means an insolvent insurer's unpaid obligation that "arises out of insurance that covers the members of the purchasing group to the extent that the insurance is obtained by the purchasing group, the insurance is written by an authorized insurer, and <u>the claim is made by a person residing in or located in the State</u>[.]" Md. Code Ann., Ins. § 9-301 (d)(1)(i)(1)(B) (1997) (emphasis added).[9] Yet again, this language evinces the legislature's intent to provide protection only for current residents of Maryland.

Accordingly, when considered in light of the stated purpose of the statute, the legislative history of the statute, and other definitions of "covered claim" contained in the same statutory provision, it is clear that a covered claim exists only when the claiming corporation seeking coverage is a resident of Maryland at the time it presents its claim to Maryland's PCIGC.

### B.     Manor Care's Equitable Argument Is Unavailing

Apparently recognizing that its legal position is without merit, Plaintiff resorts to an equitable argument in an effort to avoid the strictures of the statute. Specifically,

---

[9]     The Plaintiff's argument that certain sections of the relevant statutes support its interpretation that "is" can mean "has been," suffers from two principal deficiencies. First, the Plaintiff's argument is circular, as most of the sections cited by the Plaintiff depend upon the meaning of the term "resident." Second, although Plaintiff emphasizes certain words, Plaintiff offers no explanation as to how the cited sections of the statute support its position.

Plaintiff contends that because of the differences between the Maryland statute and "most other guaranty fund statutes," an entity like Manor Care would potentially "be without recourse and forced to absorb the loss the insolvent insurer created" if the Court rules in favor of the Defendant. (Plaintiff's Cross Motion for Summary Judgment at 16-17.) Plaintiff's equitable appeal fails for several reasons. First, and most importantly, a court cannot expand the application of a statute enacted by the legislature in order to further the supposed equities presented by a particular case. Moncrief v. Hobby, 133 F. Supp. 152, 159 (D. Md. 1955), aff'd sub nom. Moncrief v. Folsom, 233 F.2d 471 (4th Cir. 1956).

Prior to the legislature's creation of the PCIGC, claimants and policyholders of an insolvent insurer generally had to absorb the entire amount of claims asserted against them. The statute creating and empowering the PCIGC provides "a mechanism for the prompt payment of covered claims under certain policies and to avoid financial loss to residents of the State who are claimants or policyholders of an insolvent insurer[.]" Md. Code Ann., Insurance § 9-302(1). In enacting the Guaranty Fund Statute, the legislature made clear that PCIGC was not created to provide bureaucratic benevolence, nor was it intended to be a panacea providing limitless coverage for all policyholders and claimants of an insolvent insurer. Rather, the statute expressly conditions coverage on several requirements, including that the claimant or policyholder be a resident of Maryland at the time the claim is presented. Further, even where a policyholder presents a covered claim, PCIGC's obligation is limited. See Md. Code Ann., Insurance

§ 9-306 (a)(2). This Court cannot simply expand the legislatively imposed limits of that statute to address the purported equities of this case.

Plaintiff also argues that it would be unfair for this Court to hold that Plaintiff does not have a covered claim because Plaintiff also does not have a covered claim under the guaranty fund statute of Ohio, where its principal place of business is now located. That the Ohio guaranty fund statute does not offer Plaintiff a remedy hardly justifies a finding that PCIGC must cover the claims presented by Plaintiff. Other courts, interpreting guaranty fund statutes that, like Maryland's guaranty fund statute, require the policyholder be a resident at the time of the insurer's insolvency, have precluded an entity from recovering from a guaranty fund where the entity was a resident at the time it contracted for the insurance but subsequently moved its principal place of business outside the state. See, e.g., Illinois Life & Health Insurance Guaranty Ass'n v. Boozell, 682 N.E.2d 291 (Ill. Ct. App. 1997). Simply put, having elected to abandon Maryland as its principal place of business five years ago, there is nothing unfair to Plaintiff in construing the Maryland Statute in accordance with its plain meaning. Accordingly, Plaintiff's efforts to raise "fairness" arguments to support its position fail.

### III.  CONCLUSION

For the reasons set forth above and for the reasons set forth more fully in PCIGC's opening memorandum, Manor Care does not meet the statutory requirements for coverage by PCIGC. Wherefore, this Court should grant summary judgment in PCIGC's favor and deny Manor Care's cross-motion for summary judgment.

/s/
Albert J. Mezzanotte, Jr., Bar No. 00197
Edward M. Buxbaum, Bar No. 05015
Whiteford, Taylor & Preston L.L.P.
Seven Saint Paul Street
Baltimore, Maryland 21202-1626
(410) 347-8700

Attorneys for Defendant,
*Property & Casualty Insurance Guaranty Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of October, 2003, a copy of the foregoing Memorandum was mailed, first class, postage prepaid, to:

James H. Hulme, Esquire
Deanne M. Ottaviano, Esquire
Arent Fox Kintner Plotkin & Kahn, PLLC
1050 Connecticut Ave., NW
Washington, D.C. 20036-5339

and

Gerald R. Kowalski, Esquire
Jodi D. Spencer, Esquire
Cooper & Walinski
900 Adams Street
Toledo, Ohio  43624
*Attorneys for Plaintiff*

/s/
Edward M. Buxbaum

*1518802.v2*