`IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| MANOR CARE OF AMERICA, INC. | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Civil Action No. L02CV4206 |
| PROPERTY & CASUALTY INSURANCE GUARANTY CORPORATION | ) ) ) ) |
| Defendant. | ) ) |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

**I.    Introduction.**

PCIGC argues that it is not obligated to cover Manor Care's claims for one main reason: The definition of the term "resident" uses the word "is" which unambiguously refers to the present tense. This issue is not that simple. Manor Care is entitled to summary judgment because:

- The statute is ambiguous as to what is a "covered claim";

- There is nothing in the legislative history from which intent to restrict coverage only to current residents can be inferred;

- PCIGC's interpretation is not consistent with other provisions of the statute or the broad purpose of the statute; and

- Manor Care's interpretation leads to a more equitable result, while PCIGC's interpretation leads to an unreasonable and absurd result.

II.     Argument.

   A.     The Statute is Ambiguous.

"Covered claim" is defined as **"an insolvent insurer's unpaid obligation...that...arises out of a policy of the insolvent insurer issued to a resident...."** MD. CODE ANN. § 9-301(d)(1)(i)(1)(A). The term "resident" is defined as **"a corporation or entity whose principal place of business is in the State."** MD. CODE ANN. § 9-301(h)(2).

The definition of "covered claim" allows individuals or corporations that have policies issued to them as Maryland residents to have "covered claims." The policies that Manor Care's claims arise under *are* policies "issued to a resident of the State [of Maryland]" – it is undisputed that the policies were issued to Manor Care when it was a Maryland resident. A "covered claim" therefore includes claims asserted under policies issued to Maryland residents, even though those residents subsequently moved out of the state.

PCIGC asserts that the statute requires current residency, however, because the term "resident" uses the word "is" which, according to PCIGC, unambiguously refers to the present. If PCIGC is correct, at most this makes the statute ambiguous.[1]

---

[1] Ambiguity may be found where a statute is susceptible to more than one reasonable meaning. *See, Midboe v. Industrial Claim Appeals Office of the State*, No. 03CA0159, 2003 WL 22208414, *1 (Colo. App. Sept. 25, 2003) ("...if a statute is fairly susceptible of more than one interpretation, it is ambiguous, and the court must look to other extrinsic factors, such as the statutory context, the consequences of a particular construction, and the legislative history.") (attached at Tab A). *See also Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dept. Stores, Inc.*, 15 F.3d 1275, 1283 (5th Cir. 1994) (if a statute is susceptible to more than one reasonable interpretation, then the court must look beyond the language in an effort to ascertain the intent of the legislature); *In re Jarvis*, 242 B.R. 172, 175 (Bankr. S.D. Ill. 1999) ("[w]hen...the statutory language is ambiguous or subject to more than one interpretation, the court must look to other sources for aid in determining legislative intent...."); *U.S. v. State Bd. of Equalization*, 450 F.Supp. 1030, 1035 (N.D.Cal. 1978) (where language of statute permitted two alternative constructions, choice between alternative constructions could only be made by reference to evidence other than plain language of statute).

2

However, as used in the context of the statute, the word "is" is not free from ambiguity. According to some authorities, the word "is" *can* refer to the past and mean "has been." *See Cohen v. City of New York*, 42 Misc. 2d 871, 249 N.Y.S.2d 264 (1964) (the words "is authorized" must be taken to mean "was authorized" or "has been authorized" as used in the statute in conjunction with the phrase "under existing law"); *The Sterling; The Yuna C; Picou v. United States*, 65 F.2d 439, 440 (5th Cir. 1933) (construing the word "is" as being used in the preterit (past) sense to avoid an unintended far-fetched result under a statute governing forfeiture of vessels for trading outside their licenses); *Louisville Southern Railroad Company's Receivers v. Lewis*, 101 Ky. 296, 300, 41 S.W. 3, 4 (1897) (finding that the word "is" in a procedural statute was intended as the equivalent of the words "has been").[2] When read in conjunction with the definition of "covered claim," the word "is" in the definition of "resident" must be referring to the past.

The Court must therefore follow the rules of statutory construction in determining what constitutes a "covered claim" under the statute.

---

[2] *See also* Memorandum Opposing Defendant's Renewed Motion for Summary Judgment and Supporting Plaintiff's Cross Motion for Summary Judgment (Doc. 24), p. 7, *citing* Black's Law Dictionary, 577 (6th ed. 1991). PCICG cites three cases from other states in which a court found that the term "is" refers to the present. These cases construe language in a private contract and in statutes that, because of their nature, are to be construed more strictly than the statute at issue. *See Kaskarsky v. New York Life Ins. Co.*, 260 N.Y.S. 769 (City Ct. N.Y. 1932) (The court construed the word "is" in the context of a private insurance contract, which follows different rules of interpretation than statutory interpretation); *State v. Boner,* 49 S.E. 944 (W.Va. 1905) (The court interpreted the word "is" in a statute governing the power of the court to remit a criminal penalty. Criminal statutes are penal in nature and must be construed narrowly as opposed to civil statutes. The limited reading the court assigns to the word "is" in this context has no bearing on the use of the word "is" in a remedial statute such as the Insurance Article of the Maryland Code); and *In re Melissa H*, 113 Cal. Rptr.139 (Cal. Ct. App. 1974) (The court interpreted the word "is" in a statute defining the jurisdiction of the juvenile court. Statutes defining jurisdiction are intended to have a limiting effect, and therefore this case also has no bearing on the use of the word "is" in a remedial statute such as the Insurance Article of the Maryland Code.)

B.  **This Court Should Determine that PCIGC is Obligated to Cover Manor Care's Claims Under the Statute Using Rules of Statutory Construction.**

(1)  *There Is Nothing In the Legislative History From Which Intent to Restrict Coverage Only to Current Residents Can Be Inferred.*

PCIGC claims that Manor Care's argument regarding the legislative history is incorrect in fact and in the law. It is undisputed that the pre-1975 version of the statute defined the term "covered claim" to include "an unpaid claim...which arises out of and is within coverage...issued by an insurer if such insurer becomes an insolvent insurer...and...(1) the claimant or insured is a resident of this State at the time of the insured event...."[3] It is also undisputed that the 1985 version of the statute contains a different definition of "covered claim." Further, it is undisputed that there is no legislative history or other explanation of the 1975 or the 1986 amendments that suggests that the legislature intended by revising the language to prevent former residents from obtaining coverage under the Act.[4]

This Court does not have to "read the legislature's intended changes out of the statute"[5] in order to find PCIGC's interpretation unpersuasive. As Manor Care previously pointed out, (1) the legislature provided no guidance as to why certain language was deleted, and (2) the fact that language was changed, by itself, does not support PCIGC's position that the legislature intended to restrict coverage to current residents of Maryland

---

[3] *See* Acts of 1975, ch. 651 at 2999, attached to PCIGC's Reply Memorandum as Exhibit D.

[4] The substance of Manor Care's discussion regarding the legislative history remains accurate; it is of no consequence that Manor Care did not mention the 1975 statutory amendments in its initial memorandum. *See* Memorandum Opposing Defendant's Renewed Motion for Summary Judgment and Supporting Plaintiff's Cross Motion for Summary Judgment (Doc. 24), pp. 15-17.

[5] Defendant's Reply Memorandum in Further Support of Its Motion for Summary Judgment and Opposition to Plaintiff's Cross Motion for Summary Judgment, p. 8.

only.[6] This is further supported by the fact that the 1975 amendment that removed the defining language "resident at the time of the insured event" removed the entire definition of "covered claim;" it did not single out the language "at the time of the insured event." There is therefore nothing in the legislative history from which intent to restrict coverage to only current residents can be inferred.

### (2) PCIGC's Interpretation is Not Consistent with Other Provisions of the Statute or Its Purpose.

In determining legislative intent, a court must read the language of the statute in context and in relation to all of its provisions and purposes.[7] When construed with other key provisions in the statute, it is evident that "covered claims" may be asserted by persons other than current Maryland residents.[8] PCIGC points to the use of the present tense in portions of the statute that define coverage for surety bonds and purchasing groups. These portions of the statute provide no helpful guidance because they are irrelevant – they are not the provisions under which Manor Care is seeking coverage.

Sections of the statute that are relevant to establishing a "covered claim" in this case, on the other hand, do contemplate coverage of claims asserted by entities that are not current residents.[9] For example, the definition of "resident" must be read in conjunction with the portion of the definition of "covered claim" under which Manor Care is seeking coverage – MD. CODE ANN. § 9-301(d)(1)(i)(1)(A). That provision states

---

[6] *See* Memorandum Opposing Defendant's Renewed Motion for Summary Judgment and Supporting Plaintiff's Cross Motion for Summary Judgment (Doc. 24), pp. 15-17.

[7] *See Howard Research & Development v. Concerned Citizens for Columbia Concept*, 297 Md. 357, 364 (1983).

[8] *See* Memorandum Opposing Defendant's Renewed Motion for Summary Judgment and Supporting Plaintiff's Cross Motion for Summary Judgment (Doc. 24), pp. 8-11.

[9] *Id.*

that "covered claims" <u>arise out of policies of insolvent insurers issued to a resident</u>. It does not contain language that limits coverage to current residents, such as "covered claims arise out of policies of an insolvent insurer currently held by a resident" or "covered claims arise out of policies of residents." It is undisputed that the policies under which Manor Care's claims arise <u>were issued to a Maryland resident</u>, and that the insured events, or accidents, for which Manor Care seeks coverage occurred while Manor Care was a Maryland resident.

Section 9-310(b)(1)(ii) also contemplates coverage for non-residents. That section states that when more than one guaranty fund association may apply to a claim, insureds are to first seek coverage from their state of residency. Entities can only have one residency at a given time. If only current residents were covered by the statute, this section would be unnecessary because there would *never* be a situation where an entity would be covered by the Maryland statute and a statute of another state. Even if the claim of a Maryland resident was covered under the terms of another state's statute, this section would be unnecessary because coverage would always defer to Maryland. This provision only becomes necessary when coverage is afforded to claims arising out of policies issued to residents and/or to insureds who were residents at the time of the insured event.

PCIGC's narrow interpretation of the statute also does not serve its broad purpose and it diverges from the general uniformity among state guaranty fund statutes. The Maryland statute's overarching purposes are to provide "a mechanism for the prompt payment of covered claims under certain policies..." and "to supplant the insolvent insurer to fulfill the obligations that the insolvent insurer should have fulfilled." MD.

CODE ANN. § 9-302; *Joe Shifflet, Inc. v. Property & Cas. Ins. Guaranty Corp.*, 77 Md. App. 706, 551 A.2d 913 (1989). These broad purposes of the Maryland statute are substantially the same purposes of other state guaranty fund statutes. The state guaranty fund statutes are uniform in that they all are meant to provide a mechanism for insureds to have some relief when their insurers become insolvent.[10]

Almost all of the states require that to have a covered claim, the claimants or insureds must be residents of the state at the time of the insured event – not residents at the time the claim is presented to the insolvency fund.[11] Corporate entities and individuals can only have one state of residency at a given time, and by measuring residency fairly uniformly, the states ensure that a consistent coverage mechanism exists among them. If PCIGC's interpretation is accepted, this mechanism will be disrupted and the common, overriding purpose behind the state guaranty fund statutes will be circumvented, all without any express legislative language or intent to have this effect.

---

[10] All the states that we found to have express statutory purposes provide substantially similar purposes. *See, e.g.*, DEL. CODE ANN. tit. 18, § 4202 ("This chapter shall provide a mechanism...to avoid financial loss to claimants or policyholders because of the insolvency of an insurer,..."); FLA. STAT. ANN. § 631.51 (same); 215 ILL. COMP. STAT. ANN. 5/532 (same); KAN. STAT. ANN. § 40-2901 (same); N.J. STAT. ANN. § 17:30A-2(a)(same); OHIO REV. CODE § 3955.03 (same); PA. STAT. ANN. § 991.1801 (same).

[11] *See, e.g.*, statutes cited in Manor Care's Memorandum Opposing Defendant's Renewed Motion for Summary Judgment and Supporting Plaintiff's Cross Motion for Summary Judgment (Doc. 24), p. 16 n.42. Other states having this requirement include: Alabama (ALA. CODE § 27-42-5); Alaska (ALASKA STAT. § 21.80.180); Arizona (ARIZ. REV. STAT. § 20-661); Arkansas (ARK. CODE ANN. § 23-90-103); California (CAL. INS. CODE § 1063.1); Colorado (COLO. REV. STAT. § 10-4-503); Connecticut (CONN. GEN. STAT. § 38a-838); District of Columbia (D.C. CODE ANN. § 31-5501); Hawaii (HAW. REV. STAT. § 431:16-105); Idaho (IDAHO CODE § 41-3605); Indiana (IND. CODE § 27-6-8-4); Iowa (IOWA CODE ANN. § 515B.2); Kentucky (KY. REV. STAT. § 304.36-050); Louisiana (LA. REV. STAT. § 1379); Maine (ME. REV. STAT. ANN. § 4435); Minnesota (MINN. STAT. ANN. § 60C.03); Mississippi (MISS. CODE ANN. § 83-23-109); Missouri (MO. REV. STAT. § 375.772); Montana (MONT. CODE ANN. § 33-10-102); Nebraska (NEB. REV. STAT. § 44-2403); Nevada (NEV. REV. STAT. § 687A.033); New Hampshire (N.H. REV. STAT. ANN. § 404-B:5); North Carolina (N.C. GEN. STAT. § 58-48-20); North Dakota (N.D. CENT. CODE § 26.1-42.1-02); Oregon (OR. REV. STAT. § 734.510); Rhode Island (R.I. GEN. LAWS § 27-34-5); South Carolina (S.C. CODE ANN. § 38-31-20); South Dakota (S.D. CODIFIED LAWS § 58-29A-55); Tennessee (TENN. CODE ANN. § 56-12-104); Utah (UTAH CODE ANN. § 31A-28-203); Vermont (VT. STAT. ANN. § 3612); Washington (WASH. REV. CODE § 48.32.030); West Virginia (W.VA. CODE § 33-26-5); Wisconsin (WIS. STAT. § 646.31); and Wyoming (WYO. STAT. ANN. § 26-31-103).

### *(3)   Manor Care's Interpretation of the Statute Leads to an Equitable Result, While PCIGC's Interpretation Leads to an Unreasonable and Absurd Result.*

PCIGC criticizes Manor Care's equitable arguments.[12] Contrary to PCIGC's suggestion, the Court may consider equitable arguments when interpreting a statute.[13] In fact, the Court should not interpret an ambiguous statute in an inequitable way when there is another, more reasonable and equitable interpretation available. *Id.* Moreover, the Court should not construe the statute in a way that leads to an absurd result.[14]

PCIGC's interpretation of the statute is unreasonable. It will strip certain insureds of any benefit of the very law that purports to protect them and may leave them without recourse from other state guaranty fund statutes if their insurers become insolvent. It would also prevent any insured person <u>from</u> <u>ever</u> <u>moving</u> <u>out</u> of the state of Maryland without losing the protection that the state guaranty fund statutes are meant to provide. By the same token, it would allow individuals and corporations to simply move to Maryland and have "covered claims" under the statute. Certainly the Maryland legislature did not intend for these results to occur when it changed its definition of "covered claim." Had it meant to do this, surely the legislative history would contain some mention of

---

[12] *See* Defendant's Reply Memorandum in Further Support of Its Motion for Summary Judgment and Opposition to Plaintiff's Cross Motion for Summary Judgment, p. 10.

[13] *See Western Electric Company, Inc. v. United States*, 564 F.2d 53, 66 (Cl. Ct. 1977) ("Where a particular construction will produce inequity and injustice, such a construction is to be avoided if another and more reasonable interpretation is perceived."); *VSI Enterprises, Inc. v. Edwards*, 518 S.E.2d 765, 770 (Ga. App. 1999) (where a statute is susceptible to more than one construction, it must be given that construction which is most equitable and just); *State of New Jersey v. Frank Campobasso*, 308 A.2d 674, 677 (N.J. Sup. 1973) (if a legislature's intent is in doubt, the law should be interpreted to be most consonant with equity and the common sense of the situation).

[14] *See Carpenters District Council*, 15 F.3d at 1285 ("A well-accepted canon of statutory construction requires the reviewing court to avoid any interpretation that would lead to absurd or unreasonable outcomes."); *In re Voelker*, 175 B.R. 989, 992 (Bankr. W.D. Wis. 1994) (courts will look beyond statutory language where literal interpretation would lead to an absurd result or thwart purpose of overall statutory scheme); *H.R.O. Johnston v. United States*, 163 Ct. Cl. 375, 380 (Cl. Ct. 1963) (it is a cardinal rule of statutory construction that laws are not to be interpreted so as to produce an unreasonable result) *citing Church of the Holy Trinity v. United States*, 143 U.S. 457 (1892)).

these consequences.

On the other hand, Manor Care's interpretation of the statute produces an equitable result. It serves the purpose of the statute by preserving the rights of insureds whose claims arise out of policies issued to them and insured accidents which occurred while they were Maryland residents. It also grants insureds the benefits of purchasing insurance from members of PCIGC, who fund PCIGC through assessments. Finally, it preserves uniformity among state guaranty funds.

### III.  Conclusion.

For all these reasons and those cited in Manor Care's Memorandum Opposing Defendant's Renewed Motion for Summary Judgment and Supporting Plaintiff's Cross Motion for Summary Judgment (Doc. 24), PCIGC's motion for summary judgment should be DENIED and Manor Care's cross motion for summary judgment should be GRANTED.

/s/
James H. Hulme (Bar No. 00875)
Deanne M. Ottaviano (Bar No. 15659)
ARENT FOX KINTER PLOTKIN & KAHN, PLLC
1050 Connecticut Ave. NW
Washington D.C. 20036-5339
Telephone: (202) 857-6000
Fax: (202) 857-6395

and

Gerald R. Kowalski
Jodi D. Spencer
Cooper & Walinski, L.P.A.
900 Adams Street
Toledo, Ohio 43624
Telephone: (419) 241-1200
Fax: (419) 242-5675; (419) 242-9606

Counsel for Manor Care of America, Inc.

# CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of October, 2003, I caused the foregoing Plaintiff's Reply Memorandum in Support of Plaintiff's Cross Motion for Summary Judgment to be served electronically and/or by regular U.S. mail upon the following:

Edward M. Buxbaum
Albert J. Mezzanotte, Jr.
WHITEFORD, TAYLOR & PRESTON
Seven Saint Paul St., Ste. 1400
Baltimore, MD 21202

                                              /s/
                                      Deanne M. Ottaviano