IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MANOR CARE OF AMERICA, INC.,** | : | |
|     **Plaintiff,** | : | |
| | : | |
| | : | |
|     v. | : | CIVIL NO. L-02-4206 |
| | : | |
| | : | |
| **PROPERTY & CASUALTY INSURANCE** | : | |
| **GUARANTEE CORPORATION,** | : | |
|     **Defendant.** | : | |
| | : | |

**MEMORANDUM**

Pending before the Court are:

(i)    Defendant PCIGC's[1] motion for summary judgment [Docket No. 19];

(ii)    Plaintiff Manor Care's[2] cross-motion for summary judgment [Docket No. 24]; and

(iii)    Manor Care's motion to compel and for sanctions [Docket No. 21].

For the reasons stated herein, the Court will GRANT IN PART Manor Care's motion to compel and for sanctions. The Court will hold a hearing to decide the appropriate remedy. Because discovery will be reopened, the Court will DENY PCIGC's and Manor Care's cross-motions for summary judgment without prejudice.

**I.**    **BACKGROUND**

Manor Care operates assisted living centers and nursing homes. From 1993 to 1997, PHICO

---

[1] Property & Casualty Insurance Guarantee Corporation.

[2] Manor Care of America, Inc.

insured Manor Care against claims involving medical incidents that occurred during this four-year period.[3]  Manor Care has been sued for incidents apparently covered by PHICO.  PHICO, which was ordered into liquidation in 2002, has defaulted on its defense and indemnification obligations.

PCIGC is a non-profit corporation created by the Maryland General Assembly to assume certain statutorily defined obligations of insolvent insurers.  See Md. Code Ann., Ins. § 9-302 (1997).  PCIGC assesses insurance companies authorized to do business in Maryland, see §§ 1-101, 9-306, and uses the resulting "guarantee fund" to pay statutorily defined "covered claims."  See § 9-301.  Manor Care has demanded, to no avail, that PCIGC defend[4] and indemnify it in the pending lawsuits.

The sole issue in this case is whether Manor Care qualifies as a Maryland "resident" under the code.[5]  Before 1998, Manor Care's principal place of business was in Maryland.  In September of that year, however, Manor Care moved its headquarters to Ohio.  PCIGC argues that only current residents qualify for coverage.  Manor Care disagrees, contending that PCIGC is statutorily obligated to cover any claim that arose while Manor Care was headquartered in Maryland.  Manor Care points out that a portion of the premiums it paid to PHICO before September of 1998 were presumptively passed on to PCIGC.  Because Manor Care's premiums likely supported the guarantee fund, it is equitable to interpret "resident" as including corporations located in Maryland when the premiums were

---

[3] PHICO Insurance Company insured Manor Care from June 1, 1993 to June 1, 1997 against personal injury and property damage claims arising out of medical incidents.

[4] In some circumstances, PCIGC is required to defend lawsuits on behalf of insolvent insurers and the companies they insured.

[5] An insolvent insurer's unpaid obligation qualifies as a "covered claim" only if, for the purposes of this litigation, it "arises out of a policy of the insolvent insurer issued to a resident or payable to a resident on behalf of an insured of the insolvent insurer." § 9-301(d)(1)(i)1.A.

paid, it argues. See Tracy v. Tracy, 614 A.2d 590, 594 (Md. 1992) ("[A] [c]onstruction of a statute which is unreasonable, illogical, unjust, or inconsistent with common sense should be avoided.")

After Manor Care filed the instant lawsuit, the Court allowed limited discovery focused on whether Manor Care's claims were "covered claims" as defined by the statute. During discovery, Manor Care noticed the corporate designee deposition of PCIGC. PCIGC designated Deborah Price as a person having knowledge of the claims and defenses alleged in Manor Care's Complaint.[6] The instant motion to compel and for sanctions arises out of Defense Counsel Albert Mezzanotte's conduct during Ms. Price's deposition.

## II.  ANALYSIS

During the deposition, Plaintiff's Counsel, Gerald Kowalski, probed for evidence that Manor Care's premiums were passed on to PCIGC. Mr. Mezzanotte repeatedly directed Ms. Price not to answer questions. Many of these questions appear to have been aimed at gaining a basic understanding of the operation of the guarantee fund. For example, Mr. Kowalski asked Ms. Price when PCIGC had last assessed insurance companies to replenish the fund.[7] Mr. Mezzanotte objected that these questions were irrelevant, and directed Ms. Price not to answer.

Mr. Kowalski was also rebuffed when he asked how PCIGC had treated similar insolvencies. Although Ms. Price was PCIGC's corporate designee, Mr. Mezzanotte refused to allow her to say

---

[6] Although the Court did not receive the deposition notice, the transcript of Ms. Price's deposition reveals that she was a corporate designee of PCIGC identified as having knowledge of the matters alleged in the Complaint.

[7] Some of the accounts inquired about by Mr. Kowalski do not appear to be directly at issue in this case. Mr. Mezzanotte's conduct in directing the witness not to answer was, nevertheless, improper.

who within the corporation might have the knowledge that she lacked:

> Q. What do you know about the Bandera versus Manor Care claim that was presented to the Guarantee Corporation?
>
> MR. MEZZANOTTE: Objection.
>
> THE WITNESS: I don't know anything about that.
>
> BY MR. KOWALSKI:
>
> Q. Who at the Guarantee Corporation would have knowledge about the Bandera claim?
>
> MR. MEZZANOTTE: Objection. She just said she doesn't know anything about it. Come on.
>
> MR. KOWALSKI: I'm asking her who at the Guaranty Corporation has knowledge of the Bandera claim?
>
> MR. MEZZANOTTE: Well, if she doesn't know anything about the Bandera claim, how would she know who knows about the Bandera claim? Come on, counsel. That's ridiculous.

(Price dep. 37-38).

Finally, as the transcript and audiotape reveal,[8] Mr. Mezzanotte was condescending and abrasive not only towards Mr. Kowalski but also the court reporter:

> MR. MEZZANOTTE: This case was about what you asked us to provide because the appropriate response to that interrogatory is, it's vague, it's irrelevant, and it can't be answered because it requires someone to read your materials and guess and speculate as to what you may mean. But rather than answer that way – are you shushing me?
>
> THE COURT REPORTER: Sir, I am not going to be subjected to your screaming. I'm really sorry.

---

[8] Counsel provided a copy of the tape, but explained that part of the deposition had been recorded over with excerpts from a deposition in an unrelated case. The Court reviewed the tape in its entirety and found that the entire deposition was recorded, although in scattered parts.

>MR. MEZZANOTTE: Well, that's not your choice, ma'am.
>
>THE COURT REPORTER: Yes, it is.
>
>MR. MEZZANOTTE: I'm sorry. Your job is to take down —
>
>THE COURT REPORTER: It is my choice.
>
>MR. MEZZANOTTE: – what I say.
>
>THE COURT REPORTER: Not in this climate. I will take this (indicating) somewhere. I've got this right on tape. I am not going to be subjected to your screaming.

(Id. at 39-40.)

Mr. Mezzanotte's behavior was unacceptable for two reasons. First, it has been the law in the Fourth Circuit for over twenty years that Counsel may not direct a witness not to answer on the ground of relevance. Fed. R. Civ. P. 30(d)(1); see also Boyd v. Univ. of Md. Med. Sys., 173 F.R.D. 143, 144 (D. Md. 1997). Second, Manor Care is entitled to pursue its equitable interpretation theory in discovery, and to learn how the fund operates, whether PCIGC has honored claims in analogous circumstances, and who within PCIGC might know the answers to Mr. Kowalski's questions. Manor Care's theory of recovery may fail. See, e.g., Ward Elec. Servs., Inc. v. Prop. & Cas. Ins. Guar. Corp., 599 A.2d 81, 88 (Md. 1991) (noting that a 1975 amendment repealed language that defined "covered claims" as including corporations residing in Maryland at the time of the insured event). Nevertheless, this Court expressly gave Manor Care leave to conduct discovery. There is now showing that Manor Care's discovery effort has been unreasonable or excessive.

The legal position taken by Mr. Mezzanotte was not only wrong, but his behavior was rude and condescending. Mr. Kowalski was conducting a short, courteous deposition, without badgering or

attempting to trick the witness. This is not a case, therefore, in which Mr. Mezzanotte was justifiably taking a strong line in order to protect his witness. Because the deposition was short, Mr. Mezzanotte's behavior also cannot be ascribed to patience exhausted by hours of wasted time. There may be some justification for Mr. Mezzanotte's conduct, and the Court will afford him an opportunity to explain at a hearing.[9]

### III.   CONCLUSION

The Court will GRANT IN PART Manor Care's motion to compel and for sanctions. The Court will determine the appropriate remedy after a hearing. At a minimum, however, Plaintiff's Counsel will be allowed to re-take Ms. Price's deposition. Because the evidentiary record will be reopened, the Court will, by separate Order filed this date, DENY PCIGC's and Manor Care's cross-motions for summary judgment without prejudice.

Dated this 31st day of March, 2004.

---

[9] Defense Counsel argues that the Court may not reach the merits of the motion to compel and for sanctions because Plaintiff's Counsel has not filed a certificate explaining his efforts to resolve this dispute without Court intervention. See Fed. R. Civ. P. 37(a)(2); Local Rule 104.7 (D. Md. 2001). The Court rejects this argument. First, Plaintiff's Counsel attached the necessary certificate to his reply brief. Second, it is clear from the transcript and audiotape that any discussion would have been futile in the face of Mr. Mezzanotte's behavior. Third, Local Rule 104.7 only applies to "discovery motion[s]." Motions to compel answers to deposition questions, such as the instant motion, "shall be filed with the Court and treated as any non-discovery motion." Local Rule 104.8 (D. Md. 2001). Moreover, Fed. R. Civ. P. 30(d)(3) authorizes courts to sanction persons who frustrate the fair examination of a deponent, and does not condition this authority upon the filing of a certificate.

                        _____/s/_____
                        Benson Everett Legg
                        Chief Judge