**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **MANOR CARE OF AMERICA, INC.** | : | |
|     **Plaintiff,** | : | |
| | : | |
| | : | |
|     **v.** | : | **CIVIL NO. L-02-4206** |
| | : | |
| | : | |
| **PROPERTY & CASUALTY INSURANCE** | : | |
| **GUARANTEE CORPORATION** | : | |
|     **Defendant.** | : | |
| | : | |

## **MEMORANDUM**

Pending before the Court is Defendant Property & Casualty Insurance Guarantee Corporation's ("PCIGC") motion for summary judgment.  (Docket No. 45.)  For the reasons stated herein, the Court will, by separate Order filed this date, GRANT PCIGC's motion for summary judgment.

**I.     BACKGROUND**

PCIGC is a non-profit corporation created by the Maryland legislature to collect and administer a "guarantee fund" out of which certain claims of insolvent insurers are paid.  See Md. Code Ann., Ins. § 9-302 (1997).  PCIGC assesses insurance companies authorized to do business in Maryland, see §§ 1-101, 9-306, and uses the proceeds to pay statutorily defined "covered claims" of insolvent insurers, see § 9-301.  The sole issue in this case is whether Plaintiff Manor Care of America, Inc.'s ("Manor Care") claim qualifies as a "covered claim" under the Maryland Insurance Article.

This case arises out of the insolvency of the PHICO Insurance Company ("PHICO").  From June 1, 1993 through June 1, 1997, PHICO (which was authorized to do business in Maryland)

insured Manor Care against claims for personal injury and property damage resulting from medical incidents. Manor Care contends that part of the premiums it paid to PHICO were passed on to PCIGC as assessments that financed the guarantee fund.[1] At all times prior to September 1998, Manor Care's principal place of business was in Montgomery County, Maryland. In September of 1998, Manor Care moved its principal place of business to Toledo, Ohio.

On February 1, 2002, the Commonwealth Court of Pennsylvania found PHICO insolvent and ordered it into liquidation. After that date, individuals who reside outside of Maryland sued Manor Care for personal injuries and property damage arising out of medical incidents that occurred during the policy periods. Unable to collect from PHICO, Manor Care demanded payment from PCIGC. PCIGC refused payment, contending that, because Manor Care was not then a resident of Maryland, its claims were not "covered claims."

On December 30, 2002, Manor Care filed the instant lawsuit, seeking (i) a declaratory judgment that its claims are "covered claims," and (ii) damages from PCIGC's failure to defend and indemnify it against claims that would have been covered by its contract with PHICO. The Court allowed discovery focused on one issue: whether Manor Care's claims are "covered claims." On November 12, 2004, PCIGC filed the pending motion for summary judgment.

## II.    STANDARD

The Court may grant summary judgment when "the pleadings, depositions, answers to

---

[1] PCIGC disputes this. The Court assumes, <u>arguendo</u>, that Manor Care's premiums were passed along to PCIGC and supported the guarantee fund. As explained below, Manor Care does not qualify as a resident even if its premiums remitted to the fund.

interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court must view the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987).

## III. ANALYSIS

This case turns upon whether the claims asserted by Manor Care are "covered claims," and, more specifically, whether Manor Care qualifies as a "resident" under the Maryland Insurance Article.

PCIGC is obligated to pay only "covered claims." See Md. Code Ann., Ins. § 9-306(a)(1). An insolvent insurer's unpaid obligation qualifies as a "covered claim" only if, "for insurance other than insurance that covers members of a purchasing group, [it] arises out of a policy of the insolvent insurer issued to a resident or payable to a resident on behalf of an insured of the insolvent insurer." § 9-301(d)(1)(i)1.A.[2] The Code defines "resident" as "(1) an individual domiciled in the State; or (2) a

---

[2] Md. Code Ann. Insurance 9-301(d)(1) provides, in pertinent part:

"Covered claim" means an insolvent insurer's unpaid obligation, including an unearned premium:
   (i) that:

   1. A. for insurance other than insurance that covers members of a purchasing group, arises out of a policy of the insolvent insurer issued to a resident or payable to a resident on behalf of an insured of the insolvent insurer;

corporation or entity whose principal place of business is in the State." § 9-301(h).

### A.   Plain Meaning of the Statute

PCIGC argues that Manor Care is not a resident because it moved its principal place of business to Ohio in 1998. PCIGC notes that the statute uses the present tense, and contends that an entity must be a resident of Maryland at the time it presents its claim to PCIGC.

Manor Care argues that it qualifies as a resident because its principal place of business was in Maryland at the time of the insured events. Manor Care contends that the definition of "resident" should not be interpreted strictly in the present sense because (i) the verb "is" can be interpreted to mean either "is currently" or "has been," (ii) a present tense interpretation conflicts with other provisions of the statute, (iii) a present tense interpretation conflicts with the purpose of the statute, and (iv) the legislative history does not support a strict present sense interpretation.

The Court agrees with PCIGC. The statute defines "resident" in the present tense. A straightforward, grammatical reading of the statute reveals that only corporations that currently have

---

> . . . .
>
> > (ii) that is presented on or before the last date fixed for the filing of claims in the domiciliary delinquency proceeding as a claim to the corporation or to the receiver in the State;
> >
> > (iii) that:
> >
> > > 1. except for a surety bond claim, was incurred or existed before, on, or within 30 days after the determination of insolvency; [and]
> > >
> > > . . . .
> >
> > (iv) that arises out of a policy or surety bond of the insolvent insurer issued for a kind of insurance to which this subtitle applies.

their principal place of business in Maryland are considered residents. The plain meaning of the statute, standing alone, supports PCIGC's position.

### B.    Legislative History

Moreover, the legislative history supports this interpretation. Manor Care invites the Court to interpret the definition of "resident" as encompassing corporations whose principal place of business was in Maryland at the time of the insured event. Manor Care argues that this interpretation yields a more equitable result. Because their premium payments helped finance the guarantee fund, Manor Care should now be protected by the fund, they contend.

The Maryland legislature, however, expressly repealed language to this effect in 1975. As originally enacted, a claim was covered if either "(1) the claimant or insured is a resident of this State at the time of the insured event; or (2) the property from which the claim arises is permanently located in this state." Md. Ann. Code Art. 48A, § 505(c) (1972). Chapter 651 of the Acts of 1975 rewrote this section, defining covered claims to include only policies "issued to residents of this State or which are payable to residents of this State." Md. Ann. Code Art. 48A, § 505(c) (1979). A comparison of the repealed language and the 1975 amendments clearly demonstrates that the legislature intended the new definition of "resident" to include only those corporations whose principal place of business was in Maryland at the time the claim was presented to PCIGC.

### C.    Other Provisions

Manor Care argues that other provisions of the Code (as well as its purpose) conflict with a strict present tense interpretation of the term "resident." Manor Care fails, however, to point to any example that supports this argument. Moreover, the provisions cited by Manor Care employ the

5

defined term "resident," rendering its argument circular. Accordingly, the Court finds that Manor Care is not a resident as a matter of law.

## IV.     **CONCLUSION**

For the reasons stated herein, the Court will, by separate Order filed this date, GRANT PCIGC's motion for summary judgment (Docket No. 45) and DIRECT the CLERK to CLOSE the case.

Dated this _24th__ day of June, 2005.

                                                                         _____/s/_____
                                                                         Benson Everett Legg
                                                                         Chief Judge