JUDGMENT

FILED: July 18, 2006

UNITED STATES COURT OF APPEALS

for the

Fourth Circuit

No. 05-1819
CA-02-4206-1

MANOR CARE OF AMERICA, INC., formerly known as Manor Care, Incorporated, a Delaware corporation

    Plaintiff - Appellant

v.

PROPERTY & CASUALTY INSURANCE GUARANTY CORPORATION, a private corporation formed by the state of Maryland

    Defendant - Appellee

---

Appeal from the United States District Court for the District of Maryland at Baltimore

---

In accordance with the written opinion of this Court filed this day, the Court reverses the judgment of the District Court. This case is remanded to the District Court for further proceedings consistent with the Court's opinion.

A certified copy of this judgment will be provided to the District Court upon issuance of the mandate. The judgment will take effect upon issuance of the mandate.

/s/ Patricia S. Connor
_____
CLERK

<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-1819

MANOR CARE OF AMERICA, INC., formerly known as Manor Care, Incorporated, a Delaware corporation,

                                                Plaintiff - Appellant,

versus

PROPERTY & CASUALTY INSURANCE GUARANTY CORPORATION, a private corporation formed by the State of Maryland,

                                                Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Benson Everett Legg, Chief District Judge. (CA-02-4206-1)

Argued: May 23, 2006                       Decided: July 18, 2006

Before MICHAEL, MOTZ, and SHEDD, Circuit Judges.

Reversed and remanded by unpublished per curiam opinion. Judge Shedd wrote a concurring opinion.

**ARGUED:** Gerald R. Kowalski, COOPER & WALINSKI, L.P.A., Toledo, Ohio, for Appellant. Edward Mark Buxbaum, WHITEFORD, TAYLOR & PRESTON, L.L.P., Baltimore, Maryland, for Appellee. **ON BRIEF:** Jodi D. Spencer, COOPER & WALINSKI, L.P.A., Toledo, Ohio, for Appellant. Albert J. Mezzanotte, Jr., Emily A. Daneker, WHITEFORD, TAYLOR & PRESTON, L.L.P., Baltimore, Maryland, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).


PER CURIAM:

Property and Casualty Insurance Guaranty Corporation (PCIGC), the insurance guaranty fund created by the Insurance Article of the Maryland Code, §§ 9-301 et seq. (guaranty fund or statute), covers an insolvent insurer's unpaid obligation under a policy "issued to a resident" of Maryland, § 9-301(d)(1)(i)(1). The question in this case is _when_ a policyholder must be a resident to have its claim covered by PCIGC. We hold that the statute requires a policyholder to be a resident of Maryland at the time the policy is issued. The district court's summary judgment to the contrary -- that the statute requires residency at the time the claim is submitted to PCIGC -- is therefore reversed.

I.

A.

PCIGC is a private, nonprofit, nonstock corporation that collects assessments for and administers Maryland's guaranty fund. See Md. Code Ann., Ins. § 9-302. PCIGC steps into "the shoes of the insolvent insurer," Igwilo v. PCIGC, 750 A.2d 646, 650 (Md. Ct. Spec. App. 2000) (internal quotation marks omitted), and, subject to certain limits, fulfills the obligations that the insolvent insurer should have fulfilled to Maryland residents, Joe Shifflett, Inc. v. PCIGC, 551 A.2d 913, 915 (Md. Ct. Spec. App. 1989). The corporation's avowed purpose is to "provide a mechanism

for the prompt payment of covered claims under certain policies and to avoid financial loss to residents of [Maryland] who are claimants or policyholders of an insolvent insurer." § 9-302(1).

Insurance companies must be members of PCIGC as a condition of their authority to transact business in Maryland. § 9-304(b). As members, they must pay an annual assessment to cover the expenses of PCIGC, including expenses arising from any member's insolvency. § 9-306(d). This assessment, levied by PCIGC, is in the same proportion that "the net direct written premiums of the member insurer for the preceding calendar year . . . bears to the net direct written premiums of all member insurers for the preceding calendar year." § 9-306(d)(2).

Manor Care of America, Inc. (Manor Care) is a Delaware corporation that owns and operates nursing homes and other long-term health care facilities throughout the country. Manor Care had its principal place of business in Maryland until September 1998, when it moved to Ohio. From June 1, 1993, through June 1, 1997, while a resident of Maryland, Manor Care was insured under a comprehensive general liability insurance policy issued by PHICO Insurance Company (PHICO), a company authorized to sell insurance in Maryland. Manor Care contends that the premiums it paid to PHICO during this four-year period were remitted in part to PCIGC as part of PHICO's annual assessment, though PCIGC disputes this contention.

4

In February 2002 PHICO was declared insolvent and ordered into liquidation by the Commonwealth Court of Pennsylvania. Manor Care thereafter requested that PCIGC fulfill the obligations that PHICO should have fulfilled under the policy: that is, cover liability claims asserted against Manor Care (and its related affiliates and subsidiaries) for incidents occurring during the policy period, June 1, 1993, through June 1, 1997. PCIGC repeatedly refused to provide coverage on the ground that Manor Care is not a Maryland resident under the guaranty fund statute.

B.

In December 2002 Manor Care sued PCIGC in diversity in the U.S. District for the District of Maryland, seeking (1) a declaratory judgment that its claims are "covered claims" under § 9-301(d), and (2) damages from PCIGC's failure to defend and indemnify it against malpractice and other claims that would have been covered by its policy with PHICO. The district court allowed limited discovery on whether the claims are covered under § 9-301(d). The parties stipulated that none of the parties suing Manor Care (the claimants) are Maryland residents. After the limited discovery ended, PCIGC filed a motion for summary judgment on the ground that Manor Care is not a Maryland resident within the meaning of "covered claim."

The district court granted summary judgment to PCIGC upon concluding that eligibility for coverage turns on current residency

5

-- that is, residency at the time the policyholder submits a claim to PCIGC.  Because Manor Care was not a Maryland resident in 2002 when it submitted its claims to PCIGC, the court concluded that Manor Care's claims are not "covered claims" under § 9-301(d).  Manor Care appeals.

II.

The dispute centers on when a policyholder must be a Maryland resident for a claim to be a "covered claim" under § 9-301(d)(1)(i)(1).  "Covered claim" is defined in part as:

> an insolvent insurer's unpaid obligation, including an unearned premium[,] that . . . arises out of a policy of the insolvent insurer <u>issued to a resident</u> or payable to a resident on behalf of an insured of the insolvent insurer.

<u>Id.</u> (emphasis added).  "Resident," in turn, is defined as "an individual domiciled in the State" or a "corporation or entity whose principal place of business is in the State."  § 9-301(h).

PCIGC argues that to qualify for coverage a policyholder must be a current resident, specifically, a resident at the time it submits a claim to PCIGC (and after its insurer has gone insolvent).  Manor Care counters that current residency has no bearing on whether a claim is covered.  Rather, residency at the time that the relevant insurance policy was issued is controlling.  Because Manor Care was a resident of Maryland when PHICO issued the policy on June 1, 1993, and renewed it on June 1, 1994, June 1,

6

1995, and June 1, 1996, Manor Care maintains that it is a resident within the meaning of "covered claim," § 9-301(d).

Maryland's rules of statutory interpretation are in line with the norm. "The cardinal rule . . . is to ascertain and effectuate the intention of the legislature." Degren v. State, 722 A.2d 887, 895 (Md. 1999) (internal quotation marks and citation omitted). The starting point for determining legislative intent is the language of the statute itself. Courts generally do not look beyond the statute's words if they are "plain and free from ambiguity, and express[] a definite and simple meaning." Id. When the statutory language is ambiguous, courts consider "not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of the enactment." Tucker v. Fireman's Fund Ins. Co., 517 A.2d 730, 732 (Md. 1986). In case of ambiguity, courts "may [also] consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense." Id.; see also Romm v. Flax, 668 A.2d 1, 2 (Md. 1995).

We agree with Manor Care's reading of the statute. For a claim to be covered, it must arise out of an insurance policy that was "issued to a resident." § 9-301(d)(1)(i)(1). The meaning of this phrase is plain and free from ambiguity. The phrase unmistakably tethers the residency requirement to a particular

7

event, the issuance of the policy. To be eligible for coverage, a policyholder must have been a Maryland resident when the policy was issued, not when the claim is submitted to PCIGC.

This interpretation is not upended by the statute's present-tense definition of a corporate "resident." § 9-301(h)(2) ("'Resident' means . . . a corporation . . . whose principal place of business is in the State."). When the definition of a corporate resident is read into the "issued to a resident" language in § 9-301(d)(1)(i)(1), it is clear that the Maryland residency must be contemporaneous with the issuance of the policy.

Although we find no ambiguity in the provision at issue, further analysis reveals that our straightforward reading is in line with "[t]he setting, the objectives and purpose of the [guaranty fund] enactment." Tucker, 517 A.2d at 732. Our reading, moreover, achieves a result that is logical, reasonable, and consistent with common sense. See id.

In 1986 the Maryland legislature established PCIGC in its current form, creating a self-financing guaranty fund. See Ward Elec. Servs., Inc. v. PCIGC, 599 A.2d 81, 85-86 (Md. 1991) (discussing concerns of General Assembly and aims of 1986 enactments). The legislature made clear that PCIGC is not "'an instrumentality of the State'" and that its liabilities are not the State's. Id., 599 A.2d at 86 (citing preamble, Chapter 161 of Acts of 1986). PCIGC is instead a private corporation that assesses

8

each of its members, or authorized insurers, an annual fee "in amounts necessary to pay" its expenses, including the covered claims of insolvent insurers. § 9-306(d).

As a practical matter, a portion of the premiums that Maryland residents pay to authorized insurers are passed onto PCIGC in the form of annual assessments. As the Maryland Court of Appeals has observed, "The legislative purpose [behind PCIGC] was to protect Maryland policyholders <u>who would pay as part of their premiums the assessments levied by PCIGC</u> to pay the covered claims in the [indemnity company's] insolvency." <u>Ward Elec. Servs., Inc.</u>, 599 A.2d at 86 (emphasis added). In light of this purpose, it would be illogical to exclude from coverage a policyholder that was a resident when its policy was issued and whose premiums helped finance PCIGC, but award coverage to a new or recent resident whose premiums did not support the guaranty fund.

PCIGC's counterarguments are unavailing. PCIGC points primarily to the statute's legislative history and divergence from the Model Insurance Guaranty Association Act (Model Act) to argue that only claims of current residents are covered. The legislative history, as sparse as it is, does not support PCIGC's position. Before 1975 the definition of "covered claim" specified that the claimant or insured must be "a resident of this State at the time of the insured event." 1975 Md. Laws, ch. 651 at 2999 (setting forth in brackets the language to be deleted by amendments). In

9

1975 the Maryland legislature deleted this language as part of a comprehensive overhaul of the definition of "covered claim" and adopted the current definition with its "issued to a resident" language. (The legislature added the affiliated definition of "resident" eleven years later, in 1986. See 1986 Md. Laws, ch. 440.) According to PCIGC, the Maryland legislature intended this change to benefit current residents, not past residents. This argument goes too far, however. The Maryland legislature, by deleting "resident at the time of the insured event," did not delete <u>all</u> references to past events; it simply replaced one past referent with another. Instead of being a resident at the time of the insured event, the policyholder must be a resident when the insurance policy was issued. For example, if a one-year policy was issued to a Maryland resident on January 1, 2004, the policyholder would still be considered a "resident" for purposes of § 9-301(d) if it had moved to another state by the time that the event giving rise to the claim occurred, say six months later.

For similar reasons, PCIGC's reliance on the relevant Model Act is unpersuasive. Like the pre-1975 Maryland statute, the Model Act incorporates the phrase, "resident of this state at the time of the insured event," into the definition of "covered claim." Model Ins. Guar. Ass'n Act § 5(F)(1). PCIGC contends that as of 1975 the Maryland legislature intended its guaranty fund statute to diverge from the Model Act and benefit only current residents, not

10

past residents.  Cf. Bethesda Mgmt. Servs. Inc. v. Dep't of Licensing and Regulation, 350 A.2d 390, 395 (Md. 1976) (explaining in another context that the Maryland legislature, in adopting but sightly altering the Model State Administrative Procedure Act, left "little doubt" that it intended to modify that particular model act).  Endorsing Manor Care's interpretation would, in PCIGC's view, contravene this legislative intent by effectively adopting the Model Act's language.  But, as just explained, our holding today does not align the Maryland statute with the Model Act.  Rather, it recognizes what the plain language and the statutory purpose make clear.  A policyholder, to be eligible for coverage, must be a resident at the time its insurance policy was issued, not at the time of the insured event (as the Model Act provides) or at the time of submitting a claim to PCIGC (as PCIGC urges).

For the foregoing reasons, we reverse the district court's grant of summary judgment to PCIGC.  A policyholder is a Maryland resident within the meaning of § 9-301(d)(1)(i)(1) if it was a resident when its insurance policy was issued.  Because Manor Care was a Maryland resident between 1993 and 1997, it satisfies the residency requirement for a "covered claim" under the statute.  On remand the district court will enter summary judgment in favor of Manor Care on the residency issue.

<div style="text-align: right">REVERSED AND REMANDED</div>

SHEDD, Circuit Judge, concurring:

I concur in the result reached by the majority. I write separately to note that I would hold that the statutory phrase "issued to a resident" is ambiguous. Under Maryland law, a statute is ambiguous "[w]hen there is more than one reasonable interpretation" of the statute. <u>Moore v. State</u>, 879 A.2d 1111, 1113 (Md. 2005). I believe that the phrase "issued to a resident" could reasonably be interpreted to mean (1) issued to one who was a resident at the time the policy was issued, or (2) issued to one who is currently a resident. Notwithstanding this ambiguity, I believe that the legislative history and policy behind the statute, as discussed in the majority opinion, lead to the conclusion that the majority's result is correct.